### UNITED STATES v. FRENCH.

(District Court, S. D. Florida. July 30, 1917.)

No. 617.

1. POST OFFICE ⊂⊃33—LETTERS THREATENING PRESIDENT—FOR WHOM INTENDED.

Under the rule that words of a statute judicially defined before their use therein will be construed as used in the light of that decision, unless the context shows them to have been used in some other sense, to constitute the offense denounced by Act Feb. 14, 1917, c. 64, depositing for conveyance in the mail a letter containing "any threat" to take the life of or to inflict bodily harm on the President, it must be intended that the letter be communicated to the President, the person against whom the threat is made, and thereby influence his action, which intention is negatived in the case of a letter addressed to a third person, stating, if the German people "can pay $20,000 for W. (the President) wholesale fires, or soldier poisoning answer Yes"; and further stating, "I have an invention that will destroy an entire fleet, * * * burn cities and poison thousands."

2. WORDS AND PHRASES—"THREAT."

A "threat" is any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free and voluntary action which alone constitutes consent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Threat.]

Walter T. French was indicted for an offense. On demurrer to indictment. Demurrer sustained.

Fred Botts, Asst. U. S. Atty., of Jacksonville, Fla.
George C. Bedell, of Jacksonville, Fla., for defendant.

CALL, District Judge. On July 20, 1917, the grand jury indicted the defendant for a violation of the act of Congress to punish persons who make threats against the President of the United States, approved

February 14, 1917. The defendant demurs to the indictment. The first ground of demurrer is that:

"The facts stated in said indictment do not constitute any offense against any law in existence on April 30, 1917."

And the third:

"Neither of the certain letters set forth in said indictment contains any threat to take the life of, or to inflict bodily harm upon, the President of the United States; but the said letters are an invitation, ruse, or decoy to ascertain the sentiments of the person to whom they are addressed."

The fourth:

"The said letters were not addressed to the President of the United States, and there is not alleged any intent that they should ever reach the President of the United States."

The indictment sets out the letters, after alleging the addressing of the envelope to one Karl Zapf, at Jacksonville, Fla., and mailing same with the intention of having same delivered by the postal authorities, as follows:

"Dear Sir: if the german people can pay $20,000.00 for Wilson [the President of the United States] wholesale fires, or soldier poisoning answer yes by cutting or having 6 of the Spanish banuts off at roots, I mean the ones on front of lot close to corner of gate way.          A pro-Jerman Anarcist."

And also the following:

"I have an invention that will destroy an entire fleet, *Navy* without a noise or shot, I can burn cities and poison thousands. I am not crazy or a faker but can produce the goods lets get together."

The question presented by the demurrer is: Does the mailing of the envelope containing these two writings violate the act approved February 14, 1917? That act is as follows:

That "any person who knowingly and willfully deposits or causes to be deposited for conveyance * * * any letter, paper, writing, print, missive, or document containing any threat to take the life of or to inflict bodily harm upon the President of the United States," shall be punished, etc.

[1] If these letters, separately or taken together, contain a threat to take the life of the President, or to do him bodily harm, then the demurrer should be overruled; if they do not, then the demurrer should be sustained. The decision of that question depends upon what Congress means by the use of the words "any threat." It is a rule of construction of statutes that, if the words used have been judicially defined before the legislative body uses them, then they will be construed to have been used in the light of that definition; unless the context shows them to have been used in some other sense.

[2] A threat is defined to be any menace of such a nature and extent as to unsettle the mind of the person on whom it operates, and to take away from his acts that free and voluntary action which alone constitutes consent. A. & E. Enc. of Law, 141. No particular words are necessary to constitute a threat, but these words must be intended for the person threatened. If the communication is sent to one with

the intention of having it delivered to the person threatened, and it in fact reaches him, this would be sufficient. Id. 145.

The cases referred to in the text seem to support the principles announced. The communications set out in the indictment, when tested by the rules above mentioned, do not measure up to the requirements. It is clear, from the reading of those communications, that it never was the intention of the writer to have them communicated to the President. It is clear that the intention of the writer was either to test the loyalty of the addressee or gain money from him, on the supposition that he was strongly pro-German—leaving out the possibility that the writer was demented. However, his intention is of no moment in this investigation, unless it was that his writings should be communicated to the President, and thereby influence the action of the Executive. These communications, it seems to me, negative any such intention. The indictment setting out the writings in hæc verba, their construction becomes a question of law for the court to decide.

The demurrer to the indictment will therefore be sustained.