## UNITED STATES v. METZDORF.

(District Court, D. Montana. August 8, 1918.)

### No. 3231.

1. CRIMINAL LAW ⊙⊃4—POWER TO PUNISH CRIME—UNITED STATES.

   The United States possesses only such powers to make criminal laws as are expressly set out in Constitution, or as may be necessarily implied.

2. CONSTITUTIONAL LAW ⊙⊃48—CONSTITUTIONALITY OF STATUTE—PRESUMPTION—ACT OF CONGRESS.

   The presumption is that statutes are constitutional and that Congress intended to keep within its powers; and, where statutes will bear two

---

⊙⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

constructions, one within the powers of Congress and one without them, courts will adopt the former.

3. HOMICIDE ⬤⟿92—OFFENSES AGAINST THE UNITED STATES—THREATS AGAINST THE PRESIDENT.

Act Cong. Feb. 14, 1917, providing punishment for persons threatening bodily harm to or the life of the President of the United States, has reference only to threats made against the President in his public character; the power to punish for threats against the President in his private character and capacity being vested exclusively in the states.

4. HOMICIDE ⬤⟿141(2)—THREATS AGAINST THE PRESIDENT—INDICTMENT—SUFFICIENCY—"PRESIDENT."

An indictment charging violation of Act Cong. Feb. 14, 1917, alleging a threat as made against "the President of the United States," being open to the construction that the threat was against the President in his private character and capacity, is insufficient; the word "President" being commonly used in reference to his private as well as his public character.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, President.]

5. HOMICIDE ⬤⟿92—THREATS TO KILL THE PRESIDENT—ELEMENTS OF THE OFFENSE.

Oral threats against the President of the United States not communicated to him are within the statute; Act Cong. Feb. 14, 1917, providing for punishment of persons threatening the life or person of the President.

6. HOMICIDE ⬤⟿92—"THREAT" AGAINST THE PRESIDENT—CONTINGENCY WITHIN SPEAKER'S CONTROL.

A "threat" is an avowed present determination or intent to injure presently or in the future; and that it is conditioned upon a possible contingency subject to the maker's control does not deprive it of the quality of a threat.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Threat.]

7. HOMICIDE ⬤⟿141(2)—THREATS AGAINST THE PRESIDENT—INDICTMENT—SUFFICIENCY—AMBIGUITY—INNUENDO.

An indictment under Act Cong. Feb. 14, 1917, charging defendant with threats against the life and person of the President of the United States, alleging defendant used the words, "If I got hold of President Wilson I would shoot him," is insufficient; such words being ambiguous and alleged without innuendo.

William Metzdorf was indicted for violation of Act Cong. Feb. 14, 1917, providing for punishment for persons threatening the life or the person of the President of the United States, to which indictment he demurs. Demurrer sustained.

B. K. Wheeler, U. S. Atty., of Butte, Mont., for plaintiff.
W. T. Pigott and M. S. Gunn, both of Helena, Mont., for defendant.

BOURQUIN, District Judge. Act Cong. Feb. 14, 1917, c. 64, 39 Stat. 919, provides:

"That any person who knowingly and willfully deposits or causes to be deposited for conveyance in the mail or for delivery from any postoffice or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of or to inflict bodily harm upon the President of the United States, or who knowingly and willfully otherwise makes any such threat against the President, shall upon conviction be fined not exceeding $1,000 or imprisoned not exceeding five years, or both."

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The indictment herein charges that defendant in this state—

"knowingly and willfully, unlawfully and feloniously, did make a threat to take the life of and to inflict bodily harm upon the President of the United States, said threat being then and there uttered and spoken by the said William Metzdorf in words and substance as follows, to wit: 'If I got hold of President Wilson (meaning Woodrow Wilson, the President of the United States), I would shoot him'—contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

Arraigned, defendant, electing to plead before securing counsel, pleaded not guilty. A day for trial was set. Later defendant sent a message to the court that he was unable to procure counsel. Thereupon the court appointed two gentlemen whose ability and fidelity to the best traditions of the great profession have long since elevated them to leadership, with all the material rewards, esteem, and prestige the term implies. This not alone to serve defendant and the administration of justice, but also to emphasize the duty of the bar therein at a time when there is a disposition no more surprising in its character than in the quarter of its origin, if not to deny those accused of violation of war legislation, more especially the Espionage Law, any counsel, at least to restrict them to the lesser members of the bar, and in addition to virtually deny bail; and also to set the seal of judicial condemnation upon this infringement of constitutional rights.

The plea of not guilty has been withdrawn, and a demurrer to the indictment interposed, upon the ground that the latter "is insufficient in law upon its face in this: That it does not charge a public offense." The demurrer has been argued with thoroughness and ability. In behalf of defendant it is contended: (1) The statute, though in general terms, must be construed to apply to threats against the President in his public character and capacity only, for that, if intended to apply to threats against the President in his private character and capacity, it is without the power of Congress and unconstitutional. (2) This established, the indictment is insufficient, for that it does not charge the defendant threatened the President in his public character and capacity. (3) The language alleged does not in any event constitute a threat within the statute.

[1-3] In respect to the first contention, if counsel for both parties are not in accord, counsel for plaintiff hardly dissent. Its determinative principles, long since made classical by the Supreme Court, will be briefly stated as follows:

Before the federal Constitution and Union of states, the rights and duties of our people were (1) inherent, as affirmed by the Declaration of Independence, and (2) created by the laws of the states. All power to protect the people therein was vested in the states. Each state had complete and exclusive jurisdiction within its borders, and no jurisdiction without them. For mutual benefit the states adopted the federal Constitution and perfected the Union. Therein they ceded part only of their power to the United States, reserving to themselves all not ceded. They vested the United States with some power,

not all. They created and granted to the United States new powers, made up of such cessions—powers the states enjoyed in part and separately, and not wholly and collectively—created and granted powers over all the states, over the Union. And the powers so ceded, created, granted to and vested in the United States, are those only expressly set out in the Constitution, and in addition powers implied in that they are reasonably necessary or appropriate to exercise of the express powers aforesaid. It follows that, while within the states, both states and United States have sovereignty and powers, the United States has only those powers ceded and vested as aforesaid, and can exercise none others. All others are the states', and to be exercised by them alone.

Amongst the powers so vested in the United States is that to provide itself with officers. Therefrom is implied the power in the United States to protect its officers as such, a power necessarily inherent in all governments, to conduct their affairs, to protect their agents, to preserve the government. This implied power extends no farther than necessary and appropriate, viz. to protect officers from injury on account of official action contemplated, in performance or performed, and, it is ventured, on account of official incumbency. In brief, the United States has inherent power to prohibit and punish injury to its officers, when the injury is incited and inflicted because they are officers; and this, because the injury is to the United States. In personal character and capacity, however, officers of the United States, including the President, the chief executive officer, are no more than other men. They have no more rights and duties than other men. They stand before all laws as other men. Like other men, for protection in their personal character and capacity, for protection of their rights, privileges, and immunities, that are not created by nor dependent upon the Constitution, within the states, they must look to state power alone, for the United States has none. Personal security is an inherent right antedating the Constitution, neither created by nor dependent upon the Constitution, and is of the power and duty of the states to ensure to every one within their borders. The states ceded none of this power to the United States, they reserved it wholly to themselves, and it is theirs to this day. Any invasion of this personal security is an offense against the state only. Hence the United States has no power to prohibit and punish assault or murder of or threats against individuals generally within the states, but only in cases of the like in relation to its officers as such, and in relation to individuals as beneficiaries of some right or immunity created by or dependent on the federal Constitution.

To these latter ends, Congress has enacted several statutes (sections 19, 20, 21, 62, 65, Penal Code, Act March 4, 1909, c. 321, 35 Stat. 1092, 1100 [Comp. St. 1916, §§ 10183–10185, 10230, 10233]), but this of the instant case is the first expressly designed to afford protection in any particular to the person of the President. It is noteworthy that there is no federal statute denouncing the offense of murder of the President, or any other federal officer, within the states. The presumption is that statutes are constitutional, that Congress

intended to keep within its powers, that general language capable of construction to exceed the powers of Congress, was by it intended to be limited to keep within them, if possible, without violence to clear meaning of the words used. Accordingly, if statutes will so bear two constructions, one within the powers of Congress and one without them, courts will adopt the former. The general language of the statute here involved may be construed to prohibit and punish threats against the President in both public and private character and capacity; but, since Congress has not power in respect to the latter, it is presumed it intended only the former. Thus only is this statute constitutional and it is so construed.

[4] In the matter of the defense's second contention, the indictment, merely alleging the threat was against "the President of the United States," is open to the construction that the threat was against the President on account of his private character and capacity, and so does not charge an offense. Statutory language is not sufficient in cases where, as here, it may apply to innocent as well as to guilty acts. The indictment must add to the statutory words enough to directly and positively charge the offense denounced by the statute, so that, if all be proven, the defendant cannot be innocent. Otherwise, the presumption of innocence requires construction favorable to the accused. In this respect the indictment is fatally defective. That accused used the word "President" does not demonstrate the threat was on account of the office. The title is commonly used in references to the President in private as well as public character and capacity.

[5] In the matter of the defense's third contention, it is based on the theory (1) that oral threats not communicated are not within the statute, and (2) that oral words of action dependent on a contingency within the speaker's control cannot constitute a threat. At common law simple threats, without intent thereby to influence the action of the person threatened, did not constitute a crime, though sufficient to invoke security to keep peace. Threats to so influence were not crimes unless communicated, being impotent otherwise; and it is believed all authorities holding communication to be an essential element of threat, have in mind threats to influence. Threats sufficient to invoke security to keep peace need not be communicated. Any person hearing them may complain, and the maker be held, though the threatened person has not heard of the threats. It is believed Congress had in mind simple threats whether or not communicated. It had in mind possible consequences, even as it had the like in mind in section 21, Penal Code, penalizing conspiracy to threaten federal officers even though no threat be made, much less communicated. These views accord with United States v. Stickrath (D. C.) 242 Fed. 151, but dissent from United States v. French (D. C.) 243 Fed. 785, cases construing this statute.

[6] Congress having power to penalize threats against federal officers, its discretion determines what is a threat, the substance and method thereof. The first part of the statute contemplates (1) a written threat (2) deposited with the postal service for conveyance or de-

livery. The threat is made, when the writing is so deposited. Hence, the offender is the depositor, and not the writer. The second part of the statute, and under which is this indictment, applies to him who "otherwise makes any such threat," importing a threat to kill or to inflict bodily harm, made orally, or in writing exhibited. A threat is an avowed present determination or intent to injure presently or in the future. In threats to influence, existence of intent to execute is not essential; in the threats denounced by the second part of the statute, it is otherwise. That the threat is conditioned upon a contingency subject to the maker's control does not deprive it of the quality of a threat, if the contingency be a possible one. Every threat unexecuted involves some contingency, if none other than that the maker's purpose be not abandoned, or that execution by him be not prevented.

The possibility that the contingency may happen, and the present intent be executed, the possible consequences to the President, is the evil at which the statute is aimed, and which is the gist of the offense. "After a trip to the moon I will kill you" is not a threat, because the contingency upon which execution of the threat is based is impossible. "After a trip to Butte I will kill you" is a threat, for contrary reason. "If A. tells me to kill B., I will do so," is a threat. "If I some time form an intent to kill B., I will do so," is not a threat, because of absence of present intent. Ambiguous words may constitute a threat, but must be alleged with innuendo. This to satisfy the rules of pleading hereinbefore referred to.

[7] The threat herein is so far ambiguous that it is as open to the construction that it relates to a situation past, and so is not an avowed determination to injure presently or in the future, as it is to the construction that it relates to a future situation, and so is an avowed determination to injure in the future. Did defendant mean, "If I had gotten hold of President Wilson I would have shot him," which is not a threat, or did he mean, "If I get hold of President Wilson I will shoot him," which is a threat? In any future indictment the innuendo must be included.

The demurrer is sustained.

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes