Normand P. MICHAUD, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7872.

United States Court of Appeals
Tenth Circuit.

July 7, 1965.

Glenn W. Clark, Denver, Colo., for appellant.

David K. Winder, Asst. U. S. Atty. (William T. Thurman, U. S. Atty., was with him on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

LEWIS, Circuit Judge.

Appellant was convicted of having threatened the life of the President of the United States, a violation of 18 U.S.C. § 871,[1] in a telephone conversation placed to the White House from a coin-operated telephone in Kanab, Utah. The verbal threat, received by a Secret Service agent at the White House, was contained in substantially the following language:

> "I was in on the assassination of President Kennedy and I am going to kill President Johnson in the near future. I have sold some cattle and purchased a rifle with a scope. I have written a letter to the White House today in which I told the President I would kill him."

Among appellant's contentions respecting the occurrence of prejudicial error during the course of the trial is the claim that the identification of appellant as the person making the telephone call was based entirely upon inadmissible hearsay and consequently is insufficient to support conviction. Particular claim is made that the court erred in allowing the Secret Service agent to testify to his conversation with a Kanab, Utah, telephone operator to the effect that the subject telephone call to the White House had originated from a particular pay

---

1. Section 871(a) reads as follows: "Whoever knowingly and willfully deposits for conveyance in the mail or for delivery from any post office or by any letter carrier any letter * * * containing any threat to take the life of or to inflict bodily harm upon the President of the United States * * * or knowingly and willfully otherwise makes any such threat against the President * * * shall be fined not more than $1,000 or imprisoned not more than five years, or both."

telephone in Kanab. This evidence was admitted not for the purpose of proving the truth of the operator's statements but to show that the call handled by the operator and received by the agent was one and the same. It was properly admitted for such purpose. Proof of the place of origin of the call was made by the proper admission of routine business records of the telephone company under 28 U.S.C. § 1732 and the testimony of the telephone operator that the caller stated he was calling from a particular number. Eyewitness testimony that appellant was in and near the telephone booth at such time clearly supplied a proper foundation for the admission of the operator's testimony, presenting a jury question upon the identity of the caller. See Andrews v. United States, 10 Cir., 78 F.2d 274, 105 A.L.R. 322; VII Wigmore on Evidence, 3d ed., § 2155. We therefore find no merit to this claim of error; other similar claims are also without merit. However, we find it necessary to reverse the judgment because of plain error affecting substantial rights in the general administration of justice in jury trials, Rule 52(b), Fed.R.Crim.P.

In instructing the jury as to the elements of the crime defined by 18 U.S.C. § 871, specifically the meaning to be given the words "knowingly and willfully otherwise makes any such threat against the President * * *," the trial court stated:

"However, in threats—and this is our case—made to one not incited to carry them out there must be proof beyond a reasonable doubt that the maker of such threats intended to carry them out himself."

This instruction, to which no objection was taken, was apparently based upon the holding in United States v. Metzdorf, D. Mont., 252 F. 933. But the Metzdorf case represents the extreme minority view and has not been followed by other courts, see, e. g., Ragansky v. United

States, 7 Cir., 253 F. 643; United States v. Reid, W.D.La., 49 F.Supp. 313, aff'd, 5 Cir., 136 F.2d 476, cert. denied, 320 U.S. 775, 64 S.Ct. 87, 88 L.Ed. 465; United States v. Stickrath, S.D.Ohio, 242 F. 151. By inserting the words "knowingly and willfully" in the statute, Congress was referring to the intentional nature of the threat. As the Seventh Circuit stated in Ragansky v. United States, supra, at 645:

"A threat is knowingly made, if the maker of it comprehends the meaning of the words uttered by him; * * *.

"And a threat is willfully made, if in addition to comprehending the meaning of his words, the maker voluntarily and intentionally utters them as the declaration of an *apparent* determination to carry them into execution." (Emphasis supplied.)

We hold that the instruction in the case at bar was faulty and, under the particular circumstances of the case, prevented the jury from giving its proper consideration to the issues. This is so because, as the government readily concedes, the record is completely barren of any evidence that appellant had any intent whatsoever to effectuate his threat against the President. The theory of the government's case was that appellant made the threat in an effort to cause serious trouble to an acquaintance with whom he had a long-standing and violent feud and that he identified himself as being such other person when making the call. Obviously, if the jury followed the mandate of the instruction a verdict of guilty could not have been found.[2]

Although conceding the instruction to be error, the government argues that there was no prejudice because the instruction was favorable to the defendant. Usually a defendant cannot claim prejudice from an incorrect instruction that is favorable to him. See Killian v.

2. Apparently the jury chose to ignore the instruction as completely ununderstandable to them in view of the posture of the government's evidence and argument. During their deliberation they indicated to the court that they were confused as to the requisite intent necessary to convict; the subject was not clarified.

United States, 368 U.S. 231, 258, 82 S.Ct. 302, 7 L.Ed.2d 256; Conley v. United States, 6 Cir., 257 F.2d 141. But here the instruction was favorable to the defendant not in the sense of imposing a higher degree of proof but rather by inserting a false issue into the case. When a false issue of magnitude sufficient to nullify proper consideration of the issues is inserted into a case, the proper administration of justice is thwarted and a conviction so based cannot stand.

The judgment is reversed and the case is remanded for a new trial.