**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth Harold SMITH,
Defendant-Appellant.**

**No. 81–1548.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Feb. 1, 1982.

Decided Feb. 12, 1982.

David J. Phillips, Asst. Federal Public Defender, Kansas City, Kan. (Leonard D. Munker, Federal Public Defender, Kansas City, Kan., with him on the brief), for defendant-appellant.

Vernon E. Lewis, Asst. U. S. Atty., Kansas City, Kan. (Jim J. Marquez, U. S. Atty., Topeka, Kan., with him on the brief), for plaintiff-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Kenneth Harold Smith appeals a jury verdict that found him guilty of mailing a threatening letter to the President of the United States, a violation of 18 U.S.C. § 871(a). On appeal Smith contends the evidence presented was insufficient to show beyond a reasonable doubt that he deposited the letter for conveyance in the mail, and the trial court gave an instruction that presented a false issue to the jury.

Smith stipulated that while imprisoned at the Kansas State Penitentiary he wrote the following letter dated April 8, 1980:

"Dear Mr. President

My name is Kenneth Harold Smith Sr. # 31600 I'm at the Kansas State Penitentiary doing a 3 to 10 yrs. for Felonious Assault ,with a Deadly Weapon and Criminal Damages to State Property.

I get out on my Correctional Release Jan. 9th 1981. But if Director Robert Atkins refuses to let me out on the above date mentioned I'm going to kill you Mr. Carter when I do get out July 9th 1985 thats the end of my maximum sentence?

Mr. Kenneth Harold Smith Sr. # 31600 106 E.A. & T.

Box 2 Lansing Kansas 66043"

The envelope was addressed to President Carter at the White House in Washington, D. C., and Smith's name and address were

shown in the upper left corner as the return address. The envelope was postmarked from Lansing, Kansas, on April 11, 1980, and was received at the White House on April 28, 1980.

A Secret Service agent interviewed Smith at the penitentiary. According to the agent's testimony, corroborated by a prison counselor who was present at the interview, Smith acknowledged writing the letter, repeated its contents as best he remembered them, and declared his continuing intention to kill President Carter. The defense presented no evidence.

## I

▮ Smith contends that his conviction must be overturned because the government presented no evidence to show he deposited the letter for conveyance in the mail, an element of the crime with which he was charged.[1] While there was evidence that Smith wrote the letter and addressed it to the President, the only direct evidence that Smith mailed it was as follows:

"Q. [By defendant's counsel] What types of things did you ask him [defendant]?

A. [Secret Service agent] The first thing I asked him was if he was indeed the author of a letter *sent* to the President of the United States that was dated April 8, 1980.

Q. He readily admitted that, did he not?

A. Yes, he did.

Q. And you asked him to write out as best he could remember what he *sent*. Is that correct?

A. Yes, that is correct.

Q. And he readily did that, did he not?

A. Yes, he did."

R. II, 34 (emphasis added).

"Q. [Prosecuting attorney] How did you come to be present during the course of that interview?

A. [Prison counselor] Due to a letter that was *sent* out and I got a phone call from the Treasury Department or Secret Service that they wanted to talk to him about a letter, which I had already known he had *sent* a letter. And Mr. Bay wanted to talk to him. So I brought him up to talk to Mr. Bay."

R. II, 46–47 (emphasis added).

In reviewing the sufficiency of the evidence to determine whether substantial evidence supports the jury's conclusion of guilt beyond a reasonable doubt, an appellate court must consider in the light most favorable to the prosecution not only the evidence introduced but all reasonable inferences that may be drawn therefrom. *See, e.g., United States v. Blitstein*, 626 F.2d 774, 776 (10th Cir. 1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981); *United States v. Brinklow*, 560 F.2d 1008, 1009 (10th Cir. 1977). The Secret Service agent and the counselor stated that Smith freely admitted writing and addressing the letter, readily rewrote the substance of the letter from memory, and announced his continued intention to kill the President. Neither the agent nor the counselor said that Smith protested he had never mailed the letter, never intended that it be mailed, or the like. Because at the interview Smith repeated the threat and did not disclaim mailing the letter, the jury could reasonably infer that Smith was acknowledging sending the letter as well as writing it. The direct evidence and the inferences available to the jury constitute substantial evidence in support of the jury's conclusion.

## II

▮ Defendant Smith's second contention focuses upon the sentence in the court's instruction discussing "threat": "The term

---

1. 18 U.S.C. § 871(a) provides:

"Whoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of or to inflict bodily harm upon the President of the United States, ... shall be fined not more than $1,000 or imprisoned not more than five years, or both."

'threat' means an avowed present determination or intent to injure presently or in the future."[2] Smith argues that this instruction requires proof of Smith's actual intention to carry out the threat, which is more than the Tenth Circuit cases require. *See United States v. Hart*, 457 F.2d 1087 (10th Cir.), *cert. denied*, 409 U.S. 861, 93 S.Ct. 150, 34 L.Ed.2d 108 (1972); *Michaud v. United States*, 350 F.2d 131 (10th Cir. 1965). Although acknowledging that his interpretation of the court's instruction may be viewed as favorable to him because, to reach its verdict of guilty, the jury had to find Smith intended to fulfill the threat, Smith argues it created a "false issue" in the minds of the jurors, may have confused them, and therefore requires a new trial. *See id.*[3] However, we believe Smith reads too much into the instruction.

The key word used in the instruction, "avowed," means "openly acknowledged or declared." *Webster's Third New International Dictionary* 151–52 (1976). We believe a fair reading of the instruction requires the jury to find that the defendant had openly declared a present intention to injure the President—which is nothing more than requiring the jury to find that defendant declared to others an "apparent determination" to injure the President, language

this Court has previously approved. *See United States v. Hart*, 457 F.2d 1087, 1090 (10th Cir.), *cert. denied*, 409 U.S. 861, 93 S.Ct. 150, 34 L.Ed.2d 108 (1972).[4] Requiring that the defendant's intention be "apparent" or "avowed" is intended to preclude conviction if the defendant keeps secret an intention to harm the President.

AFFIRMED.

---

2. The entire paragraph containing this sentence is as follows:

> "The term 'threat' means an avowed present determination or intent to injure presently or in the future. A statement may constitute a threat even though it is subject to a possible contingency in the maker's control. The prosecution must establish a 'true threat,' which means a serious threat as distinguished from words uttered as mere political argument, idle talk or jest. In determining whether words were uttered as a threat the context in which they were spoken must be considered."

3. In holding that the government need not prove that the defendant intended to carry out the threat, *Michaud* disagreed with *United States v. Metzdorf*, 252 F. 933 (D.Mont.1918), terming it the "extreme minority view." Smith contends that the portion of *Metzdorf* with which *Michaud* disagreed was its use of the same language challenged by Smith: "A threat is an avowed present determination or intent to injure presently or in the future." *Metzdorf*, 252 F. at 938. However, this Court's disapproval was of the *Metzdorf* court's holding that

"simple threats," which are those not made for the purpose of influencing the conduct of the person threatened, require for conviction "existence of intent to execute." *Metzdorf*, 252 F. at 937–38.

4. Prior to *Hart*, the Supreme Court expressed "grave doubts" whether apparent determination is sufficient for conviction. *Watts v. United States*, 394 U.S. 705, 708, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969). *But see Rogers v. United States*, 422 U.S. 35, 48, 95 S.Ct. 2091, 2099, 45 L.Ed.2d 1 (1975) (Marshall, J., concurring) (suggesting only that the statute requires the government to show the defendant intended his statement to be regarded as a threat). Subsequent circuit courts have been nearly unanimous in concluding that actual intent to harm the President need not be shown. *See, e.g., United States v. Kelner*, 534 F.2d 1020, 1025 n.6 (2d Cir.), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976) (collecting cases). *Cf. United States v. Lincoln*, 589 F.2d 379 (8th Cir. 1979) (intent to carry out threat to life of judge need not be proven).