Hiller Arthur **HAYES**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 16733.

United States Court of Appeals
Eighth Circuit.

Nov. 21, 1961.

Stanely M. Rosenblum, St. Louis Mo., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee, D. Jeff Lance, U. S. Atty., and John A. Newton, Asst. U. S. Atty., St. Louis, Mo., on the brief.

Before SANBORN, MATTHES and RIDGE, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal in forma pauperis from a judgment of conviction and a sentence of imprisonment for a period of 99 years, based upon the verdict of a jury finding Hiller Arthur Hayes guilty of three violations of the Federal Kidnaping Act, 18 U.S.C. § 1201,[1] as charged in a three-count indictment in which Hayes and Vivian Darlene McCracken were defendants.

The indictment was returned on June 20, 1960. The first count read as follows:

> "The Grand Jury charges:
>
> "That on or about the 5th day of June, 1960, Hiller Arthur Hayes and Vivian Darlene McCracken, the defendants, did knowingly transport and willfully cause to be transported, by automobile, in interstate commerce a person who had been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, carried away and by defendants held, to wit, one Harry Robert Wilde, Jr., who was by said defendants transported from St. Louis County, in the State of Missouri, within the Eastern Division of the Eastern District of Missouri, to Monroe County, in the State of Illinois.
>
> "In violation of Section 1201, Title 18, United States Code."

The second and third counts were in identical language, except as to the names of the persons charged to have been kidnaped and unlawfully transported. Marie Schnelting was the victim named in the second count, and Robert Portell the victim designated in the third count.

The defendants first came before the District Court on June 27, 1960. The defendant McCracken was represented

---

1. "§ 1201(a). Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

by counsel. The following colloquy took place between the court and Hayes:

"The Court: Have you any counsel?

"Defendant Hayes: I do not.

"The Court: Do you desire to be represented by a lawyer?

"Defendant Hayes: I would like to have the Court's permission to defend myself.

"The Court: Are you a lawyer?

"Defendant Hayes: No. sir. I would rather try it for myself. I realize I have to have presence of counsel.

"Mr. Robyn [counsel for the Government]: He said he realized he will have presence of a counsel.

"The Court: Well, you can defend yourself if you want to. I have seen a lot of people do it. They have appeared silly and foolish to do it.

"Defendant Hayes: Let's say I am silly.

"The Court: Do you want to represent yourself?

"Defendant Hayes: Yes sir, I do.

"The Court: You understand if you desire a lawyer, and have no money to employ one the Court will appoint one.

"Defendant Hayes: I understand that. I still prefer to defend myself.

"The Court: Very well. Are you ready to enter a plea this morning?

"Defendant Hayes: No, I am not.

\*　\*　\*　\*　\*　\*

"The Court: Arraignment will be deferred to July 8th; arraignment will be passed to July 8th."

The defendants were arraigned on July 8, 1960. Counsel who had previously appeared for the defendant McCracken also then appeared for Hayes. A plea of not guilty was entered by each defendant as to each count of the indictment. In a discussion with respect to the amount of bail which had been set, counsel for the Government stated to the court, in the presence of the defendants, that the case was not a "death penalty case," since the victims had been released unharmed. The case was set by the court for trial on September 26, 1960.

On September 12, 1960, Mr. Robyn, counsel for the Government, Mr. Bornschein, one of the attorneys for McCracken, and Hayes in person appeared before the trial judge in his chambers. There the following proceedings took place:

"Mr. Robyn: Your Honor, defendant Hiller Hayes, who is present here, originally in this Court when he was first brought in indicated he wished to represent himself. There is another defendant McCracken, who at that time indicated she was represented by the firm of Shaw, Hanks and Bornschein. Mr. Hanks was here at that time and entered his appearance as attorney for Mrs. McCracken.

"Your Honor, at a subsequent hearing I thought the firm of Charles M. Shaw indicated they represented Hiller Hayes.

"The Court: I believe I heard that.

"Mr. Robyn: Now, it is my understanding that Mr. Shaw's firm does not represent Hayes, and I thought since this trial is set for two weeks from today we had better get the record clear as to just who is, if anyone, does represent Hiller Hayes.

"The Court: Have you got a lawyer?

"Defendant Hayes: No, I don't.

"The Court: Have you employed one at any time in connection with this case?

"Defendant Hayes: No.

"The Court: You have not?

"Defendant Hayes: No.

"The Court: Has the Court at any time appointed a lawyer for you?

"Defendant Hayes: No, I asked your permission to defend myself.

"The Court: What comment did I make on that?

"Defendant Hayes: Pardon?

"The Court: What comment did I make?

"Defendant Hayes: You said you thought I was foolish, which you are not alone, so I still wish to defend myself. This Mr. Shaw is not going to defend me.

"The Court: What is your position in this? Do you want a lawyer?

"Defendant Hayes: No, I don't wish to have a lawyer. I would rather defend myself.

"The Court: You would?

"Defendant Hayes: Yes, sir.

"The Court: I think you have a right to do that if you want to. I wouldn't care to appoint a lawyer for you if you don't want one, but I will appoint one and you can confer with him on how to handle it. Have you had any experience? Have you ever tried a case in your life?

"Defendant Hayes: Pardon?

"The Court: Have you ever tried a case in court?

"Defendant Hayes: No, but due to the fact I am standing trial for my life, I believe, as I get it, I have a right to take it for myself.

"The Court: There is some merit in that suggestion. Have you ever been a defendant in any criminal trial? Or been tried?

"Defendant Hayes: Several times, yes.

"The Court: Have you ever been convicted?

"Defendant Hayes: Yes.

"The Court: Did you defend yourself on those occasions?

"Defendant Hayes: No, I didn't.

"The Court: Did you have a lawyer to defend you?

"Defendant Hayes: Yes.

"The Court: You would now like to see how you would handle it yourself?

"Defendant Hayes: Yes.

"The Court: I am pretty much inclined to go along with you.

"Defendant Hayes: I can't do no worse than they did.

"The Court: From what I have seen around here one time and another maybe you're right. How many convictions have you had?

"Defendant Hayes: Four.

"The Court: I will appoint Mr. William G. Pettus as amicus curiae to represent the Court and sit in at all hearings on this matter.

"(Thereupon Judge Moore made a telephone call and talked with someone at the other end of the telephone.)

"The Court: This is a very able man I have just appointed. He is my representative, the friend of the Court. If you want to ask him anything, he will be very glad to advise you. He is not in active practice in the last few months, he is withdrawing from practice. He is available and has nothing to interfere. He is practically retired. If you want to know anything, I am sure he will be glad to give you any advice in the matter.

"Is there anything else at this time?

"Mr. Robyn: I think not."

Charles M. Shaw, Claude Hanks and L. L. Bornschein, who had previously entered their appearance as counsel for Vivian McCracken, and had appeared for both defendants upon their arraignment, were, by leave of court, permitted to withdraw as counsel for Hayes.

The trial court on September 21, 1960, ordered the Clerk to furnish Hayes, Vivian McCracken, her counsel and Mr. Pettus a list of the entire panel of veniremen and their respective places of abode; this in conformity with 18 U.S.C. § 3432, and, no doubt, in deference to the ruling

of the Supreme Court in Smith v. United States, 360 U.S. 1, 8, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041, holding that a violation of the Federal Kidnaping Act *"may* be punished by death."

The trial of the case commenced on September 26, 1960. Before the selection of a jury, the following proceedings took place in open court, out of the hearing of the jury panel:

"The Court: I want the record to show that the defendant, Hiller Hayes, stated that he did not have and did not desire counsel. The Court carefully explained to him on his arraignment the other day, the Court carefully explained to him that he had the right to have the advice of counsel and Hayes stated that he did not desire counsel, desired to represent himself. The Court told him if he desired counsel and had no money to pay him, the Court would appoint counsel for him. He waived the advice of counsel. The Court then told him he would not try to force counsel upon him, but that he would appoint an amicus curiae, and that if Hayes at any time during the trial desired to consult the amicus curiae in regard to any legal question that might arise, the said amicus curiae would advise him to the best of his ability, and the Court thereupon appointed Mr. William G. Pettus, an experienced and able counsel, who has been a member of the bar of this court for about twenty years, as amicus curiae.

"Mr. Pettus: If Your Honor please, could the reporter read that so that Mr. Hayes will hear it.

"The Court: (Addressing defendant Hayes) I have just made a statement. You were out of the hearing, and I want the Reporter to read to you the statement that I have just made that is going into the record. So if you have any objection to it, now is the time to advise the Court.

"(Statement by the Court, referred to, read by the Reporter.)

"The Court: You understand that?

"Defendant Hayes: Yes.

"Mr. Pettus: I would like the record to be clear, I will speak only when spoken to. It is up to you to call on me.

"The Court: (Addressing defendant Hayes) If you desire his advice you ask him. He won't volunteer anything, but he will try to give you advice if called upon.

"Defendant Hayes: Will I have a chance to talk to him before the trial starts?

"The Court: No. I don't think there is any occasion for that. You did not desire the advice of counsel; but if you have any particular question you want to take up now you may do so. You understand that if there is anything, any particular thing you want to ask him about, you may do so.

"Defendant Hayes: That is all right.

"The Court: What?

"Defendant Hayes: That is fine."

After the selection of the jury, Hayes was asked if it was satisfactory to him. He replied that it was, and agreed that the jurors need not be kept in the custody of the United States Marshal during the trial.

In advance of the opening statement of counsel for the Government, and while Hayes and the jurors were not present in the courtroom, defendant McCracken, with leave of the court, withdrew her plea of not guilty and entered a plea of guilty.

Counsel for the Government, after the jury was recalled and in the presence of Hayes, made his opening statement, outlining in detail what the Government's evidence was expected to prove. Hayes was asked by the court whether he wished to make a statement to the jury. He said that he wanted to know why Mrs. McCracken had been excused. He was told, out of hearing of the jury, that she had entered a plea of guilty.

He was informed that he could make his opening statement to the jury at that time or could wait until the Government had rested. Hayes said he would rather wait.

The Government's evidence, which was undisputed, shows that the defendants on the afternoon of June 5, 1960, a Sunday, went to the Glenn Thomas Auto Sales in Lemay, St. Louis County, Missouri, to obtain an automobile; that there they met Robert Portell, a salesman for the company; that they selected a 1959 Oldsmobile; that Hayes asked Portell if he would take a check for the purchase price; that Portell said he would with proper identification; that Hayes gave him a check signed "Jack E. Wolfram", together with some credit cards in the name of Wolfram; that Portell took the check, a buyer's order, and the credit cards, to Howard Bishop, the sales manager for the sales company; that Bishop placed a long distance call to Wolfram at Beloit, Wisconsin, the address shown on the buyer's statement; that Bishop then called the County Police Department and asked that an officer be sent for a person "possibly for forgery"; that Officer Harry Robert Wilde, Jr., of the St. Louis County Police Department, arrived; that he was shown the check, the purchaser's statement, and the credit cards; that he talked to Hayes, who, with Vivian McCracken, was in the office of the sales company; that Wilde asked for some suitable person to search Vivian McCracken, but no one was available on the premises; that he had Bishop cross the street to ask Wilde's mother-in-law, Mrs. Marie Schnelting, who worked in an ice cream store, to come over; that she came and was asked by Wilde to search Vivian McCracken; that as she was completing her search, Vivian McCracken pulled a loaded revolver from her purse and pointed it at Mrs. Schnelting and Officer Wilde; that Wilde drew his service revolver; that Hayes jumped over and grabbed it out of his hand; that Hayes then forced Wilde, Mrs. Schnelting and Portell to get into the front seat of the 1959 Oldsmobile; that Hayes and

Vivian McCracken, each with a revolver in hand, occupied the back seat; that Wilde was told to drive, which he did; that Hayes designated the route to be taken; that they were followed by a County Police car and a patrol car; that Hayes directed Wilde to take a highway leading to Illinois over the Jefferson Barracks Bridge; that the police cars continued to follow the Oldsmobile; that after crossing the bridge into Illinois, Hayes told Officer Wilde, "If you don't get rid of those police cars pretty soon * * * you and I are going to hell together"; that Hayes told Wilde to stop the car and get out and get the keys and pistols from the officers in the cars following; that Hayes was told by Wilde that the police would not give up their pistols but that he would try to get their keys; that Wilde stopped the car and went back to the police cars which were following and which had also stopped; that the officer in the first car behind the Oldsmobile gave Wilde the car keys; that Hayes, in the meantime, was at the rear window of the Oldsmobile, pointing his gun at Wilde; that as Wilde was going back to try to get the keys of another police car, the Oldsmobile took off; that Hayes, at gun point, forced Portell to drive; that at Hayes' direction, he drove on Highway No. 3 in Illinois at speeds up to 120 miles an hour, passing other cars on hills and curves; that Hayes commenced shooting through the rear window of the Oldsmobile at the police cars which were following; that he succeeded in wounding a police officer; that the Oldsmobile went through Waterloo, Illinois; that, a few miles beyond, a road block had been set up by the Illinois State Police; that Portell asked Hayes what to do, and was told to stop; that Portell stopped the car; that, by means of a public address system on one of the police cars, the two defendants were told to release their victims and come out unarmed; that about ten or fifteen minutes later, Portell and Mrs Schnelting were released; that the kidnaping and the chase lasted about one hour; that after the victims were released and

Hayes and Vivian McCracken were apprehended, the guns they had used were found in the back seat of the Oldsmobile; that Hayes and McCracken were taken to the Sheriff's office in Monroe County, Illinois, and from there to St. Louis County Police Headquarters in Missouri, and thence to the Glenn Thomas Auto Sales, where they re-enacted the kidnaping with Officer Wilde, Portell, and Mrs. Schnelting; that the Identification Bureau of the St. Louis County Police Department took pictures of the re-enactment; that while the kidnaping was being re-enacted, Hayes told Officer Wilde that he had been lucky, since when he first came into the Sales office where the kidnaping took place Hayes would have shot him had he said anything about an arrest.

In cross-examining Officer Wilde, Hayes asked the following questions, and received the following answers:

"Q. I said, at no time did I tell you I would hurt you as long as you done what I told you, is that right? A. I don't understand that.

"Q. Well, you said that I said it didn't matter whether the gun [that Hayes took from the Officer] had a hair trigger or not, that you were dead anyway. A. True.

"Q. Now, I don't recall this incident. I did tell you that if you did not do what I told you that you would be hurt; did I hurt you at any time, you or any of the other hostages? A. No."

In cross-examining Mrs. Schnelting, Hayes asked her:

"Q. Mrs. Schnelting, at any time did I insinuate to you that I would hurt you as long as yon done what I told you to do? A. You never did say what you were going to do, that is what kept us at the point which we didn't know what you were going to do, because when you got a revolver pointed at you, what would you do?

\*　　\*　　\*　　\*　　\*　　\*

"Q. Did I hurt you at any time? A. No, no.

"Q. Did I hurt any of the other hostages? A. No.

"Q. Did you believe I would hurt you? A. Yes, I did.

"Defendant Hayes: All right. Thank you.

"The Witness: You're welcome."

When court convened on September 27, and before the Government had rested its case, Hayes asked permission to address the court, and, that being granted, said:

"Then I must ask for a mistrial on the grounds that the prosecution has removed by intimidation or by promise the only witness that I had for my defense. I further believe that the prosecution has a sufficient amount of witnesses without depriving me of the only means of defense that I retained."

The motion for a mistrial was denied. Hayes then said:

"The Court knows that the only defense that I have is Mrs. McCracken, and she was removed by the Court or by the prosecution, and I haven't even had time to arrange a means of defense other than that, and this was a surprise attack."

Hayes stated:

"This young lady is innocent, and I intend to prove her so. Now, she has been intimidated into entering a plea of guilty, and that does not seem right to me."

The court assured Hayes that Vivian McCracken would be available to him as a witness, and that he could consult her before calling her to the stand.

Police Captain Fred J. Vasel, of the St. Louis County Police Department, was called as a witness for the Government. He testified that he first saw Hayes on June 5, 1960, at the Monroe County Jail in Waterloo, Illinois; that Hayes was taken from there to the Glenn Thomas Auto Sales, where he, his companion, and his victims re-enacted the kidnaping; that Hayes made an oral statement at

the Police Headquarters after the re-enactment; that, after making the oral statement, he made and signed a detailed written statement; that, before making it, he was advised that he did not have to make any statement and that if he did make one it could be used against him; that after the statement of Hayes was typed, it was signed by him at Captain Vasel's request. The statement was identified by the Captain, was marked "Government's Exhibit No. 12," and was offered in evidence. Hayes then said:

"Your Honor, I wish to have this statement dismissed as evidence in this case because it was taken under duress, and it was not taken by a federal officer."

The Court said:

"I think the witness has already stated all the circumstances connected with the taking of it, has he not?

"Mr. Robyn [counsel for the Government]: I think he has, Your Honor.

"The Court: Overruled.

"Defendant Hayes: That is all."

Hayes said nothing further about the statement, did not cross-examine Captain Vasel about it, made no request that the court make inquiry with respect to its voluntariness, and made no offer to prove that he was forced to make or to sign it.

There is no substantial difference between the statement made by Hayes as to what occurred in the afternoon of June 5, 1960, and the testimony of the victims of the kidnaping at the trial.

We note, however, that to the following question contained in the statement:

"What was the purpose in kidnaping the aforementioned subjects?",

Hayes answered:

"Well, originally, I took them along so that they could not call the police, but later when the police cars started chasing us I kept them for the purpose of using them as hostages. I knew if I had some hostages the police would not be so likely to start shooting at us, and that was why I did not turn them loose, because I knew the minute they were out of the car and we were alone the shooting would start, and we would have it."

The statement also contains the following question and answer:

"*Question*: What is your purpose in making the foregoing statement?

"*Answer*: I am caught, so what the hell."

Hayes' opening statement to the jury, after the Government had rested, consisted of a recital of his past history and his difficulties with the law. It had no relevance to the case on trial. He assured the jury that Vivian McCracken had been coerced by him into becoming his companion because he had threatened to bring about the death of her children if she did not do what he wished. He stated that she was an innocent woman. He said:

"Ladies and Gentlemen, Your Honor. I have been permitted by the Honorable Judge Moore to represent myself and defend myself in this case.

"Actually I came here not to defend myself but to defend an innocent person, Vivian McCracken. Through some twist of the court or the prosecution, this young lady has been induced through fear to plead guilty to this crime. She is definitely not guilty, and if she had stood trial I am quite sure I could bring about her release.

\* \* \* \* \* \*

"I am thirty-five years of age. I am an ex-convict. I have served fourteen years of my life in prison, various prisons that is, one of which was Alcatraz, California, the Federal Prison, considered the worst known prison in the United States, I believe. During my time in prison I was considered by the inmates to be a very dangerous man. I was also respected and feared by them."

He ended his statement to the jury by saying:

"As I said before, I do not know what your verdict is going to be, although I am quite certain in my own mind what it is going to be in my case, and I will not ask you for your sympathy, for any leniency of the Court whatever, because I assume that I have been proven guilty. So I will sit down and let you do as you please."

The only witness called by Hayes was Vivian McCracken. She testified that after Hayes had been released from Mc-Neil Island Prison, she was induced to accompany him as his wife and to do what he told her, by his threats to bring about the death of her children if she refused. At the conclusion of her testimony, Hayes said to the jury:

"I don't know anything else to say. I don't have anything in my defense. As I said before, I only wanted to prove my statement by this young lady and possibly help her. So I will sit down and let you do what you will."

After both Hayes and the Government had rested, the court asked him, out of the hearing of the jury, if he had any instructions that he wanted given. Hayes replied:

"I can't think of a thing. * * * No, I don't request anything."

His closing argument to the jury was as follows:

"Ladies and Gentlemen. I do not know what your verdict is going to be. However, it is quite legible. I will not ask you for your sympathy on my part. If the verdict is guilty I will not ask for sympathy because I do not suppose I have any coming. I am a grown man, and I—at least I consider intelligent enough to know what I am doing. So I will let you do as you wish. I could not induce you by conversation to change your verdict in any way. So I will not try.

"This gentleman [counsel for the Government] has made me out as bad as possible, and that is his duty. So I have no animosity or hard feelings toward him. I know that he is doing his job as he sees fit and as he is compelled to do.

"That is all I will say."

The court's charge to the jury was fair to Hayes. After consulting with Mr. Pettus, amicus curiae, Hayes excepted to the refusal of the court to advise the jury as to the terms of imprisonment authorized by statute as punishment for the offenses charged in the indictment. That was the only exception taken to the court's instructions.

We have stated the facts leading up to the conviction of Hayes in far greater detail than would ordinarily be justified, in the hope of fairly portraying what he did, both before and during the trial, and what the trial court did to insure that the trial was fair and impartial.

Mr. Stanley M. Rosenblum was appointed by this Court to represent Hayes on this appeal. We are greatly indebted to Mr. Rosenblum for his efforts on Hayes' behalf and for an excellent brief and argument.

The errors assigned relate (1) to the sufficiency of the indictment; (2) to venue; (3) to the waiver of counsel by Hayes; (4) to the failure by the trial court (a) to determine whether the confession challenged by Hayes as having been procured by duress was voluntary, and (b) to submit the issue of its voluntariness to the jury.

The indictment charged the interstate transportation by Hayes of persons he had kidnaped, in violation of 18 U.S.C. § 1201. It did not charge that he had held them for any specific reason. It is contended that the indictment was fatally defective because there can be no violation of the Federal Kidnaping Act unless the kidnaped individual is "held for ransom or reward or otherwise." In other words, it is asserted that an indictment charging a violation of the Act must allege that the kidnaped person was

held for some reason which comes within the meaning of "ransom or reward or otherwise." The Court of Appeals for the Seventh Circuit, in United States v. Varner, 283 F.2d 900, expressed that opinion. The Varner case involved the kidnaping of a baby by a childless woman who wanted a child. The indictment alleged that the baby was held "for reward or other reasons." The Court of Appeals ruled that the indictment, in so far as it alleged that the baby was held for reward was sufficient, and that the words "or other reasons" might be treated as surplusage. The court decided that since there was no proof that the baby had been held for reward, the trial court had erred in denying the defendant's motion for an acquittal.

The Court of Appeals for the Fifth Circuit, in Clinton v. United States, 260 F.2d 824, an appeal from the denial of a motion to vacate sentence under 28 U. S.C. § 2255, considered the sufficiency of an indictment charging a violation of the Federal Kidnaping Act, similar to the indictment in the instant case, and had this to say (p. 825):

> "Appellant complains that, although he was charged with unlawfully kidnapping and holding the victim, he was not charged with holding him 'for ransom or reward.' The statute does not make this an ingredient of the crime. It requires only that the person charged with transportation be shown to have 'unlawfully * * * kidnaped * * * or carried away and held for ransom or reward *or otherwise*' the victim. An allegation that appellant unlawfully and knowingly transported in interstate commerce the victim who had theretofore been unlawfully kidnapped and carried away by the said defendants and held is entirely adequate to withstand this motion. It is difficult to see how the addition of the words 'for ransom or reward or otherwise' would have added anything to the indictment because obviously 'otherwise' comprehends any purpose at all. If appellant desired

to know more of the purpose the government intended to prove for his unlawful holding, he could have made a proper motion before trial to that end. His failure to do so waived his right to raise the point after conviction. Knight v. Hudspeth, 10 Cir., 112 F.2d 137; Knight v. United States, 8 Cir., 137 F.2d 940."

In Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522, the Supreme Court ruled that an officer who is unlawfully kidnaped to prevent the arrest of the kidnaper is "held for * * * reward or otherwise." The court pointed out that the Federal Kidnaping Act of June 22, 1932, 47 Stat. 326, proscribed the interstate transportation of any kidnaped person "held for ransom or reward"; that by the amending Act of May 18, 1934, 48 Stat. 781, 18 U.S.C. § 408a [1940 Ed.], there was added to the quoted language the words "or otherwise, except, in the case of a minor, by a parent thereof." The report of the Senate Judiciary Committee, quoted in the footnote on page 127 of 297 U.S., on page 396 of 56 S.Ct. recommending the passage of the bill which became the amending Act, stated: "The object of the addition of the word 'otherwise' is to extend the jurisdiction of this act to persons who have been kidnaped and held, not only for reward, but for any other reason."

The essential elements of the crime denounced by the Federal Kidnaping Act are, we think, those which are included within the language of the Act as quoted by the Supreme Court in Smith v. United States, 360 U.S. 1, on page 7, 79 S.Ct. 991, on page 995, as follows:

> "(a) Whoever knowingly transports in interstate * * * commerce, any person who has been unlawfully * * * kidnapped * * * shall be punished (1) by death if the kidnapped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment

for any term of years or for life, if the death penalty is not imposed."

The question in the Smith case was not the sufficiency of an indictment, but was whether a violation of the Act could be charged by information if indictment was waived by a defendant. The court laid no stress on the statutory words "held for ransom or reward or otherwise." We note that on page 9, 79 S.Ct. on page 996 the court said:

"This Court has, in recent years, upheld many convictions in the face of questions concerning the sufficiency of the charging papers. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. E. g., Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774; United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92. This has been a salutary development in the criminal law."

■■■■ The attitude of this Court with respect to what reasonably may be considered minor and nonprejudicial defects in indictments is expressed in Hewitt v. United States, 8 Cir., 110 F.2d 1, 6, as follows:

"The sufficiency of an indictment should be judged by practical, and not by technical, considerations. It is nothing but the formal charge upon which an accused is brought to trial. An indictment which fairly informs the accused of the charge which he is required to meet and which is sufficiently specific to avoid the danger of his again being prosecuted for the same offense should be held good."

See, also, Anderson v. United States, 8 Cir., 262 F.2d 764, 769–770.

■■■■ We are convinced that Hayes was sufficiently informed by the indictment, in the instant case, of the charges he was required to meet; that the defect or imperfection of which complaint is made was minor and formal; and that the indictment was sufficiently specific to avoid any possibility of his being prosecuted a second time for the same offenses. There cannot be the slightest doubt that Hayes knew exactly with what offenses he was charged. We hold that the indictment was sufficient.

■■■■ It is contended that the case against Hayes should not have been tried in the City of St. Louis; this because 18 U.S.C. § 3235 provides: "The trial of offenses punishable with death shall be had in the county where the offense was committed, where that can be done without great inconvenience," and because the opinion of the Supreme Court in Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, holds that a violation of the Kidnaping Act is an offense which *may* be punished by death, depending upon the evidence at the trial. The shortest answer to this contention is, no doubt, that Hayes at no time made a request that the case be transferred from the City of St. Louis to St. Louis County, and that the right of a defendant to be tried in a particular venue is a personal privilege which can be waived. Bickford v. Looney, 10 Cir., 219 F.2d 555, 556. We may add, however, that the United States District Court had no facilities for trying cases in St. Louis County. Federal offenses committed in that County are triable in the United States Courthouse in the City of St. Louis. The offenses actually proven against Hayes were not, in fact, punishable with death, but, assuming, without deciding, that 18 U.S.C. § 3235 is applicable to a kidnaping case such as this, and assuming further that a proper request had been made by Hayes to be tried in St. Louis County, it is our opinion that the District Court would not have been required to borrow the use of the County courthouse or to hire a hall in the County in which to try the case. See and compare, Brown v. United States, 5 Cir., 257 F. 46, 48; Greenhill v. United States, 5 Cir., 6 F.2d 134, 136; Davis v. United States, 9 Cir., 32 F.2d 860; Barrett v. United States, 7 Cir., 82 F.2d 528, 534;

United States v. Parker, 3 Cir., 103 F.2d 857, 861.

The contention that Hayes did not intelligently and competently waive his constitutional right to the assistance of counsel cannot be sustained. The record, in our opinion, shows that Hayes not only deliberately and understandingly waived the assistance of counsel, but refused to be represented by counsel and insisted on defending himself. The trial court could certainly not force counsel upon him. The appointment of Mr. Pettus as amicus curiae was to enable Hayes to have someone to confer with if during the trial he wanted legal advice. The procedure was unusual, but not prejudicial to Hayes. A trial judge cannot be expected to act both as a judge and as counsel or adviser to a defendant who refuses the assistance of counsel. To preside over a criminal case in which a defendant insists on acting as his own attorney is one of the most annoying experiences to which a trial judge can be subjected. The record indicates to our minds that Hayes wanted to be able to tell the jury—without having to take the witness stand or having to comply with the rules of orderly trial procedure —his past history, his difficulties with and grievances against the law, and his claim that his codefendant was an innocent woman who had been coerced by him. If he had been represented by counsel, Hayes would have been able to get none of this irrelevant and incompetent matter before the court and jury.

The contention on behalf of Hayes that the trial court erred in holding the conference of September 12 in chambers, instead of in open court, is based upon the claim that that in some way deprived him of his constitutional right to a public trial. The conference was no part of the trial of Hayes, but was a pretrial or preliminary proceeding to enable the court and counsel for the Government to ascertain whether, at the trial to be held on September 26, Hayes was to be represented by counsel or was to conduct his own defense.

[10, 11] The question which has given us the most concern is whether the objection of Hayes to the offer in evidence of his statement or confession to Captain Vasel, of the County Police, required the trial court to conduct an inquiry into the voluntariness of the confession, and made the question whether it was voluntary one of fact which the court was compelled to submit to the jury. The following, as we have previously stated, are the words which Hayes used at the time the confession was offered in evidence:

"Your Honor, I wish to have this statement dismissed as evidence in this case because it was taken under duress, and it was not taken by a federal officer."

It seems apparent that the trial court assumed that Hayes was objecting to the admissibility of the confession because the evidence showed it was made to a County Police Officer while Hayes was in custody. At no time did Hayes say that he had been forced to make the statement or that he had been promised anything if he did make it. As we have previously stated, he did not cross-examine Captain Vasel about the circumstances under which the statement was made. He made no offer to prove that it was not voluntarily made. He did not request the court to make inquiry about the making of it, and he did not ask that the question of its voluntariness be submitted to the jury. Under the circumstances, his motion that the statement be denied admission in evidence on the ground that it was obtained by duress and was not made to a federal officer was, we think, nothing more than an objection to the sufficiency of the evidentiary basis for its admission. At the time of the objection, there was nothing to indicate that the statement was other than voluntary. The mere fact that it was made to a County Police Officer while Hayes was in custody would not make it involuntary. United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 157, 44 S. Ct. 54, 68 L.Ed. 221 and cases cited; Wan v. United States, 266 U.S. 1, 14, 45

S.Ct. 1, 69 L.Ed. 131 and cases cited. In the Wan case, Mr. Justice Brandeis, speaking for a unanimous court, said (p. 14, 45 S.Ct. p. 3):

" * * * A confession may have been given voluntarily, although it was made to police officers, while in custody, and in answer to an examination conducted by them."

See, also, United States v. Mitchell, 322 U.S. 65, 69, 64 S.Ct. 896, 88 L.Ed. 1140.

There is virtually no distinction between the evidentiary basis laid for the admission of the confession in this case and that which was held sufficient to justify the admission of the confession of the defendant in Hopt v. People of Territory of Utah, 110 U.S. 574, 584–587, 4 S.Ct. 202, 28 L.Ed. 262. Hopt, after his arrest by a detective named Carr, gave a confession to him, but not until after Hopt had been in the custody of a policeman alone for a few minutes. Carr testified that, so far as he knew, the confession was voluntary and uninfluenced by hopes of reward or fear of punishment; that he had held out no inducement and did not know of any inducement having been held out to the defendant to confess. It was contended by Hopt that the court erred in not excluding his confession, since the prosecution had not called the policeman and proved by him that nothing was said or done by him, in the absence of Carr, to influence Hopt to confess. The Supreme Court said (p. 585, 4 S.Ct. p. 208):

" * * * The circumstances narrated by the witness [Carr] proved the confession to be voluntary, so far as anything was said or done by him on the immediate occasion. There was nothing disclosed which made it the duty of the court to require, as a condition precedent to the admission of the evidence, that the prosecution should call the policeman and show that he had not, when alone with the accused, unduly influenced him to make a confession."

The court also said (p. 587, 4 S.Ct. p. 209):

"While a confession made to one in authority should not go to the jury unless it appears to the court to have been voluntary, yet as the plaintiff in error chose to let its admissibility rest upon the case made by the detective, without any intimation that it would be different if the policeman was examined, and since there was nothing in the circumstances suggesting collusion between the officers, we do not think the court was bound to exclude the confession upon the sole ground that the policeman was not introduced."

See also and compare: Wilson v. United States, 162 U.S. 613, 623–624, 16 S.Ct. 895, 40 L.Ed. 1090; United States v. Mitchell, supra, page 70 of 322 U.S., page 898 of 64 S.Ct.; United States v. Wilson, 2 Cir., 264 F.2d 104, 106; United States v. Cleary, 2 Cir., 265 F.2d 459, 461–462.

In the instant case there was nothing in the testimony of Captain Vasel to justify an inference that the confession of Hayes was not voluntary. Hayes chose to let its admissibility rest upon that testimony and to offer none himself to contradict it.

The situation with respect to the events surrounding the confession of Hayes bears no resemblance to that attending the confession held to be inadmissible by the Supreme Court in Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029. In that case, Mr. Justice Frankfurter, in his concurring opinion, on pages 417 and 418, 65 S.Ct. on page 789, had this to say:

" * * * Considering the circumstances of Malinski's detention, the long and continuous questioning, the willful and wrongful delay in his arraignment and the opportunity that that gives for securing, by extortion, confessions such as were here introduced in evidence, the flagrant justification by the prosecutor of this illegality as a necessary police procedure, inevitably calculated to excite the jury—all these in combination are so below the

standards by which the criminal law, especially in a capital case, should be enforced as to fall short of due process of law."

See and compare, McNabb v. United States, 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819 and cases cited.

It is to be noted that, in the instant case, the kidnaping, the interstate transportation of the victims, the chase by the police, the apprehension of the kidnapers, their return to the scene of the kidnaping, their re-enactment of the kidnaping, and the making of the confession by Hayes, all took place in the afternoon and evening of June 5, 1960. There was no long or continuous questioning of Hayes, and little, if any, opportunity for securing from him, by extortion or undue influence, a confession, and, so far as appears, no reason or motive for trying to induce him to confess. Hayes' offenses were committed in daylight, in the presence or sight of numerous witnesses, and with no possibility of successful concealment. In our opinion, the court did not err either in admitting the confession of Hayes in evidence or in failing to submit the question of its voluntariness to the jury.

We realize, of course, that where, under the evidence, it becomes an issue whether a confession was or was not voluntarily made, the question of its voluntariness, if at all doubtful, becomes one of fact to be submitted to the jury under proper instructions. Lyons v. State of Oklahoma, 322 U.S. 596, 600–601, 64 S.Ct. 1208, 88 L.Ed. 1481; Wilson v. United States, supra, page 624 of 162 U.S., page 900 of 16 S.Ct.

Whether Rule 52(a) of the Federal Rules of Criminal Procedure, 18 U.S.C., requiring the disregard of any error, defect or irregularity not affecting substantial rights, would apply to an error in the admission of a confession in a case such as this, where the evidence of guilt was not only strong but virtually conclusive, we think it is unnecessary to decide. But see: Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185; Kotteakos v. United States,

328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557; Homan v. United States, 8 Cir., 279 F.2d 767, 771.

We find nothing in the record on appeal which would warrant us in granting Hayes a retrial of his case.

The judgment appealed from is affirmed.