**Robert Lee GAWNE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**William Thomas BANKS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 21914-A, 21914-B.**

United States Court of Appeals
Ninth Circuit.

March 27, 1969.

Rehearings Denied May 1, 1969.

William N. Forman, Reno, Nev. (argued), for appellant Gawne.

Richard E. Fray, Reno, Nev. (argued), for appellant Banks.

Joseph L. Ward (argued), U. S. Atty., Julien G. Sourwine, Asst. U. S. Atty., Reno, Nev., for appellee.

Before: BARNES and BROWNING, Circuit Judges, and TAYLOR,* District Judge.

BROWNING, Circuit Judge:

Robert Gawne and William Banks appeal their convictions of violations of 18

* Honorable Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

U.S.C. §§ 1201(a) (2) (Federal Kidnaping Act) and 2312 (Dyer Act), and of 15 U.S.C. § 902(e) (Federal Firearms Act) (now 18 U.S.C. § 922(e)). We affirm.

## I

Appellants moved before trial to transfer the proceedings from Reno to Las Vegas in the District of Nevada on the ground that because of local pretrial newspaper and television publicity, prejudice against them in the Reno area was so great that they could not obtain a fair trial. The district court denied the motion without prejudice to renewal after the selection of the jury. The motion was renewed at that time, and again denied. Appellants contend that denial was error.

■ Appellants urge that the pretrial publicity may have denied them a fair and impartial jury.[1] It is our duty to make an independent determination whether this was so, based upon our own evaluation of the totality of circumstances disclosed by the record. Sheppard v. Maxwell, 384 U.S. 333, 362, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); United States ex rel. Bloeth v. Denno, 313 F.2d 364, 372 (2d Cir. 1963) (en banc).

The pretrial publicity reflected in the record consists of eleven news stories and photographs in two local papers, and a television interview of Mrs. Grisham, the kidnap victim.[2] Appellants assert that the public had been conditioned by this publicity to believe Mrs. Grisham's version of the incident (that she had been abducted against her will), and had been prejudiced by statements that appellants were "ex-convicts" who were wanted elsewhere in connection with the murder of two women. We have concluded that the possibility of prejudice was slight.

The publicity was not intensive, and it reached its peak in late December 1966 —more than three months before the selection of the jury in April 1967. Eight of the news stories and pictures were published in the two local papers on five days during the period December 21 through December 30, and the television interview was apparently broadcast in this same period. A short article appeared on January 10, a photograph of appellants appeared on January 12, and the final story was published on February 11. This material does not impress us as either spectacular or inflammatory. Many of the articles were rather short; some were relegated to back pages. They consisted largely of routine accounts of factual events, without editorial flavoring. The publicity reflected in this record falls far short of establishing such a probability of prejudice that the danger of a biased jury could not be dispelled by voir dire. Cf. Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

In initially denying the motion for change of venue, the trial court informed counsel that in selecting the jury he would make a particular effort "to determine whether or not the jurors selected do still retain in their memory any prejudicial information that they may have read in any newspaper reports." Accordingly, on voir dire the court questioned prospective jurors as a group and, as to most, individually as well, about their knowledge of the case. Only two veniremen stated that they remembered more from pretrial publicity than the general nature of the charge as it had

---

1. Appellants do not suggest, and the record does not indicate, that publicity or other media activity *during* trial affected the atmosphere surrounding the proceedings, brought inadmissible matter to the attention of the jury, or prejudiced appellants in any other way. *See* Sheppard v. Maxwell, 384 U.S. 333, 354–355, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 85 S.Ct. 1628, 14 L.Ed.2d 543, 381 U.S. 532, 536, 542–543 (1965);

Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); Silverthorne v. United States, 400 F.2d 627, 640–644 (9th Cir. 1968).

2. In addition, on voir dire, one juror indicated that she had heard a broadcast about the case on her way to the courthouse that morning but the contents of the broadcast are not reflected in the record.

been read to them by the court. One of them remembered "a couple of minor details" in addition to the facts alleged in the indictment; the second recalled "general details" from television and press releases. Both were excused.

Seven of the total of forty-two veniremen who were questioned were excused by the court because they felt they could not be fair and impartial. However, as to six of these, the cause of prejudice was disclosed, and, as to five, it did not relate to pretrial publicity.[3] All of the remaining potential jurors indicated that they were free of prejudice and knew no reason why they could not decide the case fairly and impartially on the evidence presented in court.

 Had the pretrial publicity been more intensive than it was, or nearer in time to the selection of the jury, a more searching inquiry of each potential juror might well have been required. *See* Silverthorne v. United States, 400 F.2d 627, 637–640 (9th Cir. 1968). Here, however, we think the inquiry conducted was sufficient to establish an absence of prejudice. Every additional question which appellants suggested was asked by the court. Further, appellants' trial counsel expressed satisfaction with the voir dire, and its adequacy has not been challenged on appeal. From our study of the pretrial publicity and the details of the voir dire we are satisfied that a fair and impartial jury could be selected, and was. Denial of appellants' motion was therefore proper. *See* Beck v. Washington, 369 U.S. 541, 556, 82 S.Ct. 955, 8 L.Ed. 2d 98 (1962).

## II

 We turn to appellants' specifications of error relating to their conviction under the Federal Kidnaping Act.[4] These concern the adequacy of the government's proof and the accuracy of the court's instructions concerning appellants' purpose in abducting the victim. We conclude that appellants' purpose was not an element of the offense and that the error in treating it as if it were did not prejudice appellants.

The indictment charged that appellants and Mary Kathryn Evans kidnaped and knowingly transported Eddith Grisham in interstate commerce "for the purpose of forcing the said Eddith Grisham to assist them in their unlawful flight from Rawlins, Wyoming, to avoid prosecution for grand larceny." The government sought to prove the recited purpose, and the court instructed the jury that it was an element of the offense, to be established beyond a reasonable doubt.

As originally enacted, the Federal Kidnaping Act applied only if the kidnaped person was "held for ransom or reward." Act of June 22, 1932, ch. 271, 47 Stat. 326, quoted in Gooch v. United States, 297 U.S. 124, 125, 56 S.Ct. 395, 80 L.Ed. 522 (1936). In 1934 the statute was amended to extend its coverage to interstate transportation of kidnaped persons "held for ransom or reward *or otherwise, except, in the case of a minor, by a parent thereof* * * *."* (emphasis added). The report of the Senate Judiciary Committee stated that the purpose of this amendment was to extend the statute's reach "to persons who have been kidnaped and held, not only for reward, but *for any other reason.*" S.Rep. No. 534,

---

3. The reasons given by the sixth were somewhat ambiguous. He stated that he worked on the same shift at Harold's Club with Mrs. Grisham and had followed the case quite closely when it happened.

4. Appellants have also challenged the validity of their Federal Firearms Act conviction. However, because their five-year sentence on this count is concurrent with their life sentence on the kidnaping conviction, which we affirm, as well as with

their five-year Dyer Act sentence, which they do not specifically challenge, we need not reach these contentions. *See, e g.,* Pasterchik v. United States, 400 F.2d 696, 702 (9th Cir. 1968). We do not choose to do so here since it is unlikely that the presence of the Federal Firearms Act conviction either affected the length of the other sentences appellants received or, under the circumstances, will materially prejudice them in the future.

73d Cong., 2d Sess. (1934) (emphasis added). The House Judiciary Committee report contains an identical statement (followed by the exception of parent-child cases, which is related not to purpose but to the act of kidnaping itself). H.R.Rep. No. 1457, 73d Cong., 2d Sess. (1934).

■ In Gooch v. United States, *supra,* the Supreme Court held that in light of the language and legislative history of the 1934 amendment a purpose to obtain pecuniary benefit was no longer required. In United States v. Healy, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964), the Court held that an illegal purpose need not be shown. In light of these cases, the statutory language, and the committee reports, several Courts of Appeals have recognized that the kidnaper's motivation is not an element of the offense. United States v. Martell, 335 F.2d 764, 766 (4th Cir. 1964); Hayes v. United States, 296 F.2d 657, 665–667 (8th Cir. 1961); Clinton v. United States, 260 F.2d 824, 825 (5th Cir. 1958); Brooks v. United States, 199 F.2d 336 (4th Cir. 1952).[5] The only contrary holding is United States v. Varner, 283 F.2d 900 (7th Cir. 1960), which was expressly disapproved by this court in Loux v. United States, 389 F.2d 911, 916 (9th Cir. 1968), and Dawson v. United States, 292 F.2d 365, 366 (9th Cir. 1961).

"The wording [of the statutes] certainly suggests no distinction based on the ultimate purpose of a kidnaping" (Healy v. United States, *supra,* 376 U.S. at 82, 84 S.Ct. at 557); for "obviously 'otherwise' comprehends any purpose at all." Clinton v. United States, *supra,* 260 F.2d at 825. There is nothing in the legislative history to contradict the unqualified assertions of the committee reports that the language was intended to mean "any other reason." Moreover, no policy considerations support a contrary view. The policy of the statute is offended though the motive for the kidnaping be laudable (Brooks v. United States, *supra,* 199 F.2d at 336); kidnaping is undesirable in itself, without regard to its purpose. United States v. Healy, *supra,* 376 U.S. at 82, 84 S.Ct. 553.

■ This does not mean that the phrase, "held for ransom or reward or otherwise," is surplusage. The word to be emphasized is "held," for "involuntariness of seizure and detention * * is the very essence of the crime of kidnaping." Chatwin v. United States, 326 U.S. 455, 464, 66 S.Ct. 233, 237, 90 L.Ed. 198 (1946). Thus the true elements of the offense are an unlawful seizure and holding, followed by interstate transportation. Hayes v. United States, *supra,* 296 F.2d at 666; Clinton v. United States, *supra,* 260 F.2d at 825. *See also* Bearden v. United States, 304 F.2d 532, 535 (5th Cir. 1962), *vacated on other grounds,* 372 U.S. 252, 83 S.Ct. 875, 9 L.Ed.2d 732 (1963); and Wheatley v. United States, 159 F.2d 599, 600 (4th Cir. 1946), which are cited with approval in Healy, *supra,* 376 U.S. at 82, 84 S.Ct. 553, 11 L.Ed.2d 527.

■■ Since appellants' purpose was not an element of the offense, this allegation of the indictment was surplusage and need not have been proved. Castle v. United States, 287 F.2d 657, 660 (5th Cir. 1961); Gambill v. United States, 276 F.2d 180, 181 (6th Cir. 1960). The question is whether introduction of this issue into the case affected appellants' substantial rights. Fed.R.Crim.P. 52 (b).[6] The answer to that question turns upon whether we can "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error * * *." Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

---

5. Motive was not an element of the offense of kidnaping at common law. *See* 1 Wharton, Criminal Law & Procedure § 371 (Anderson ed. 1957); 33 U.Mo. at K.C.L.Rev. 283 (1965); 35 S.Cal.L.Rev. 217, 218 (1962). It is generally not an essential element of crime. R. Perkins, Criminal Law 721 (1957).

6. Appellants did not object to the admission of evidence or the instructions to the jury on this ground.

It is true that the issue of appellants' motive was seriously disputed, and the improper injection of that issue into the trial necessarily diverted the attention of counsel and the jury. If on the whole record it appeared that this circumstance interfered with the proper consideration of the real issues, reversal would be required. Michaud v. United States, 350 F.2d 131, 134 (10th Cir. 1965); United States v. Leggett, 312 F.2d 566, 574 (4th Cir. 1962); cf. Verdugo v. United States, 402 F.2d 599, 606–607 (9th Cir. 1968).

In this case, however, the real issues were fully explored in the presentation of evidence and were properly submitted to the jury. The evidence on purpose was by far the weakest portion of the prosecution's case, and the presence of this issue could only have reflected adversely upon the government's general position. Those portions of the evidence that might be considered prejudicial to appellants were also relevant to the Federal Firearms Act charge and therefore admissible in any event. The government's evidence on the real issues was overwhelming. For these reasons we are entirely satisfied that the erroneous introduction of the issue of purpose into the proceedings did not affect the verdict.

Affirmed.