**Edward PAYNE, Petitioner-Appellant,**

v.

**Joseph JANASZ, Respondent-Appellee.**

No. 82–3082.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 3, 1982.

Decided June 22, 1983.

Rehearing Denied Aug. 14, 1983.

Richard L. Aynes, Appellate Review Office, School of Law, The University of Akron, Akron, Ohio, for petitioner-appellant.

Jeffrey Posner, Cuyahoga County Prosecutor, Thomas P. Gill, Richard Wise (argued), Cleveland, Ohio, for respondent-appellee.

Before ENGEL and JONES, Circuit Judges, and VAN PELT,* Senior District Judge.

VAN PELT, Senior District Judge.

This case comes to us on appeal from the United States District Court for the Northern District of Ohio,[1] which denied Appellant Edward Payne's petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

Appellant, a major in the Cuyahoga County Sheriff's Department, was indicted by the Grand Jury of Cuyahoga County on two counts of theft in office in violation of

---

* Robert Van Pelt, Senior District Judge, District of Nebraska, sitting by designation.

1. The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio presiding.

Ohio Rev.Code § 2921.41 and two counts of intimidation in violation of Ohio Rev.Code § 2921.03 for acts which took place in 1975. In 1976, an Ohio state court jury found Appellant guilty of one count of theft in office and one count of intimidation. He was sentenced to concurrent sentences of 2–10 years and 3–10 years. Appellant is currently on probation as part of his sentence for these convictions.

Appellant appealed to the Court of Appeals of Cuyahoga County which, in a 2–1 decision, affirmed the convictions. *State v. Payne,* 7 Ohio Ops.3d 432 (1978). Appellant then appealed to the Ohio Supreme Court which dismissed the appeal. The United States Supreme Court denied certiorari on the case.

After seeking habeas relief in the district court, Appellant appeals to this court and presents the following issues for review. As stated by Appellant, these issues are:

1. Whether the State's failure to prove a lawful seizure and possession as charged in the indictment resulted in a denial of Appellant's right to be convicted only upon proof beyond a reasonable doubt of all elements of the offense charged, as guaranteed by the Fourteenth Amendment of the United States Constitution.

2. Whether the State's inclusion of the extra element of "lawful seizure" relating to Appellant's theft-in-office conviction violates Appellant's right to fair notice of the charges against him, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.

3. Whether the practice of the Ohio State Appellate Courts of allowing the State to disregard the restrictions of Ohio Criminal Rule 30 to the detriment of the Appellant, while requiring the accused to abide by it, violated the due process clause of the Fourteenth Amendment.

4. Whether allowing the introduction in Appellant's State trial of an out-of-court hearsay statement which was crucial to the prosecution and devastating to the defense resulted in a violation of Appellant's right of confrontation and cross-examination as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.

5. Whether allowing the State to convict Appellant of the crime of intimidation when the State failed to prove each and every element of the crime charged beyond a reasonable doubt resulted in a denial of due process, as guaranteed by the Fourteenth Amendment of the United States Constitution.

6. Whether, upon the particular facts of the case, due process required the District Court to go beyond the *Jackson v. Virginia* standard of sufficiency and independently weigh the evidence.

7. Whether when it appears that substantial constitutional infirmities are present concerning Appellant's theft-in-office charge, due process as guaranteed by the Fourteenth Amendment requires the reversal of an intertwined intimidation charge.

After careful consideration, we affirm the decision of the district court.

I.

Because this case has caused a good deal of consternation in its movement through the judicial process, *see State v. Payne,* *supra* at 441 (Jackson, J., dissenting), a careful review of the facts is in order. In doing so, we are mindful that our review is limited. The following facts are of particular significance to the theft in office conviction.

At the time of the incidents in question, Appellant was the warden of the Cuyahoga County Jail and the officer in charge of Division 4. Division 4 was a special undercover force within the Sheriff's Department intended to conduct selective raids on various after hours establishments and to serve outstanding county warrants. The relevant facts of this case focus on the activities of the Appellant and Division 4 during the spring and summer of 1975.

Deputy Donald W. Campbell, a member of Division 4, was the State's chief witness and provided most of the evidence against Appellant. He testified as follows: Early on the morning of April 20, 1975, Campbell stayed at Division 4 headquarters while Appellant and other members of the Division conducted a raid[2] at a "cheat spot" at 10001 Cedar Avenue. Campbell was still in the office when the Division 4 members returned at approximately 6:00–6:15 a.m. He had an opportunity to observe the items seized which included liquor, gambling equipment, six handguns, and one shotgun. Of particular importance to this case, Campbell testified that included among the handguns were two pearl-handled 9mm automatics. These guns, he testified over objection, were in a plastic evidence bag which was marked with an evidence tag bearing the inscription "10001 Cedar Avenue." Continuing, Campbell stated that Deputy Sheriff Hosea Garner removed the two handguns from the evidence bag, placed them in a brown paper bag and gave them to the Appellant who, at around 7:30 a.m., then left the office with this package. Neither the guns nor the evidence tag were produced at trial. Campbell further testified that the remaining evidence was entered into the police inventory books. The books contained no reference to the two guns.

The State's next witness was Sims Goodman, an admitted pimp, who, at the time of trial, was incarcerated pursuant to convictions for receiving stolen property and possession of a concealed weapon. Goodman testified that on the morning of the raid he was nearby and observed Lee Jordan and Ivan Lapsley walking away from the area of 10001 Cedar Avenue. Prior to that date, Goodman had been working as a "door shaker" at Goldie's Lounge and had, at separate times, checked Jordan's and Lapsley's guns which Goodman described as 9mm automatics with snow-white grips. Subsequent to the raid, and on separate occasions, Goodman again checked the guns of these two men. Neither of the men carried the type of pistol he had seen prior to the raid. In reference to the absence of his pistol

with snow-white grips, Jordan stated to Goodman, "That nigger Payne got my gun." In like circumstances, Lapsley told Goodman, "Some bright nigger got it." On cross-examination, Appellant introduced a prior statement of Goodman's in which he claimed to have been threatened by the Cleveland Police Department with further prosecution if he didn't provide information which could be used to "get" Appellant.

The final witness for the State pertaining to the theft in office charge was James Marino, a reporter for the Cleveland Press, who testified that after the raid Appellant had told him that a total of six handguns had been seized.

The Appellant's case was made up of a number of witnesses whose testimony tended to contradict that of the prosecution's witnesses. Chief among these was Deputy Garner who testified that he did not even see Campbell and the Appellant at Division 4 headquarters after the raid, let alone see or give to the Appellant the pearl-handled pistols. In addition, the other four deputies who testified also denied seeing either the pistols or the Appellant. Finally, both Jordan and Lapsley denied owning such handguns, denied seeing each other the night and morning of the raid, and denied being at 10001 Cedar Avenue that morning.

The intimidation charge is based on the following evidence: Following the April 19 raid, Deputy Campbell continued to work for the Sheriff's Department until June, 1975, when he was badly beaten while on duty. As a result of his injuries, Campbell was put on disability leave until November, 1975. He testified that during the summer of his convalescence, he was visited by several members of the Sheriff's Department. These visitors wanted the file Campbell was known to have kept concerning "irregularities" he had observed in the department. Campbell refused their requests. Campbell was subsequently fired in December of 1975.

Campbell testified that on August 1 of that summer he received a call from the Appellant requesting that Campbell, his

2. The raid was conducted pursuant to a search warrant.

wife Judith, and his partner Deputy Phillip Vari, meet the Appellant for an evening at the bar at the Eastown Motel. This meeting took place on the evening of August 2, 1975. Campbell stated that the conversation with the Appellant began in a friendly manner but soon turned to the subject of Campbell's file. Apparently Appellant wanted the file and wanted to know if it contained information which might help Appellant in defeating the Sheriff in a future election. In addition, Appellant asked Campbell if the file contained information pertaining to the Appellant. Campbell refused to either turn over the file or give Appellant any information as to its contents. Campbell then testified that Appellant stated to him, "If you don't cooperate with me, I'll make sure you never get to court." In response to Campbell's question as to what he meant by this statement, Appellant replied, "Don't cooperate with me and you'll find out." Campbell's testimony concerning his conversation with Appellant was substantiated by the testimony of his wife and of Vari. Campbell's file was never introduced at trial. He claimed that it was stolen in the fall of 1975.

The defense presented two witnesses to counter the State's evidence. The first, Keldon Casey, stated that he was at the Eastown bar on the night in question and sat with Campbell and his group throughout the evening. He stated that Appellant spent very little time talking to the group and did not make the threats testified to by Campbell. Casey identified Campbell and Vari. However, he stated that the woman seated with the deputies was a blonde woman who he did not know. On rebuttal, the State introduced a picture of Judith Campbell at the bar on the night in question. In that picture she was a brunette.

The other defense witness was Marion Koszewski, an employee of the Sheriff's Department, who testified that he and his family walked into the bar as Campbell and his party were leaving. He did not talk to Campbell or the Appellant, but observed what he perceived to be a friendly goodbye between the two men. More specifically, he observed Campbell and the Appellant shake hands or hug one another. He was not sure as to which.

## II.

 At the outset we note that this case presents some very close questions. Our analysis is made all the more difficult by the fact that the case comes to us under habeas corpus jurisdiction, which significantly narrows our scope of review. Therefore, we are required to insert into our judicial equation those principles which govern habeas corpus review.

We recognize that in reviewing a state court judgment we are not acting as a "super state supreme court." *Martin v. Wainwright,* 428 F.2d 356, 357 (5th Cir.), *cert. denied,* 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157 (1970). In addition, the degree of error required to justify reversal in a habeas corpus action is greater than that required on direct appeal. *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Hicks v. Scurr,* 671 F.2d 255 (8th Cir.1982). Such errors must be of constitutional proportion, *Dupuie v. Egeler,* 552 F.2d 704 (6th Cir.1977), and, taken as a whole and within the context of the entire record, have caused the substantial rights of the petitioner as secured by the Fourteenth Amendment to have been infringed. *Jenkins v. Bordenkircher,* 611 F.2d 162 (6th Cir.1979); *Washington v. Watkins,* 655 F.2d 1346 (5th Cir.), *rehearing denied,* 622 F.2d 1116 (1981). With these principles in mind, we will now examine Appellant's assignments of error.

## III.

Appellant's first and second assignments of error raise questions concerning the language of the indictment in relation to the theft in office charge and conviction. These questions will be discussed together.

The theft in office statute, Ohio Rev.Code § 2921.41, provides in part:

(A) No public official or party official shall commit any theft offense, when either of the following applies:

(1) The offender uses his office, or permits, or assents to its use, in aid of committing the offense; . . .

(2) The property or service involved is owned by this or any other state or the United States, a municipality, or any political subdivision, department, or agency of any of them, or by a political party, or is part of a political campaign fund.

The crime of theft in office incorporates Ohio Rev.Code § 2913.02, which defines theft, and requires proof of the following elements.

1) That the defendant as a public official,
 A) Used his office to commit the offense, or B) Took property owned by the state of a political subdivision therein;

3) Knowingly obtained or exerted control over the property;

2) With the purpose to deprive the owner of the property;

4) Without the consent of the owner.

*State v. Payne, supra,* 7 O.O.3d at 440 (Corrigan, P.J., concurring).

In addition to the elements outlined above, the indictment which charged Appellant with theft in office included the additional allegation that the two pearl-handled pistols were "property lawfully seized by and in the possession of the Cuyahoga County Sheriff's Department. . . ."

Appellant contends that by including this lawful seizure and possession language, the State took it upon itself to add an additional element to the crime which, by way of the Fourteenth Amendment, it was required to prove beyond a reasonable doubt. In addition, Appellant argues that the inclusion of this element violated his right to fair notice of the charges against him as guaranteed by the Sixth and Fourteenth Amendments.

The district court, which adopted the recommended findings and conclusions of the magistrate, rejected both of these arguments. More specifically, the court held that the indictment alleged all of the essential legal elements of the crime of theft in office and that the inclusion of the "surplus words . . . did not change the nature of the offense charged" or raise a question as to fair notice. Finally, the court implied that the evidence presented to prove the crime was sufficient to negate the argument that the inclusion of the false issue constituted fundamental unfairness. We agree.

■ At the outset, we note that it is apparent that, under the statute in question, lawful seizure is not an element of the crime of theft in office. Under Ohio law, the crime of theft in office is a crime against actual possession and not against ownership or lawful possession. *State v. Payne, supra* 7 O.O.3d at 436, 443–44. Therefore "the State of Ohio *could* have prosecuted the Appellant for a crime against 'mere possession'." *Id.* at 444 (Jackson, J., dissenting) (emphasis in original). In addition, there is little dispute that the proof of this additional element did not meet the requisite standard of proof.[3] Therefore, the issue presented for our consideration is whether the inclusion of this false issue of lawful seizure interjected an element of fundamental unfairness into the trial.

■ In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) the Court stated:

It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process. These standards no more than reflect a broader premise that has never been doubted in our constitutional system: that a person cannot incur the loss of

---

3. The magistrate's report contains the only statement of an argument that evidence existed that the weapons were lawfully seized. The magistrate reasoned that, although weapons were not explicitly referred to in the search warrant, the reference to other illegal paraphernalia was sufficient to justify the seizure of the guns. In addition, the magistrate further reasoned that, considering the large scale of the raid, the seizure of weapons was reasonable in order to protect the officers involved. This question of the reasonableness of the seizure is not before us. However, we note that the magistrate's findings as to the meaning of "illegal paraphernalia" is largely speculation not supported by the record.

liberty for an offense without notice and a meaningful opportunity to defend.

*Id.* at 314, 99 S.Ct. at 2786 (citation omitted). *See Scott v. Perini,* 662 F.2d 428 (6th Cir.1981), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982). In addition, as the court explained in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the Due Process Clause of the Fourteenth Amendment mandates that a criminal defendant cannot be convicted "except upon proof beyond a reasonable doubt of any fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. at 1072. Finally, it is well established that Due Process requires the accused be given his right to fair notice of the criminal charges against him, so that he may prepare an adequate defense. *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *Watson v. Jago,* 558 F.2d 330 (6th Cir.1977).

■ This does not mean that some superfluous language in an indictment cannot be tolerated and that the prosecution must be held strictly responsible for all inartful use of the language.

"The insertion of surplus words in the indictment does not change the nature of the offense charged." *Bridges v. United States,* 346 U.S. 209, 223, 73 S.Ct. 1055, 1063, 97 L.Ed. 1557 (1953). *See Ford v. United States,* 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927); *United States v. Archer,* 455 F.2d 193 (10th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 135, 34 L.Ed.2d 100 (1972); *Gambill v. United States,* 276 F.2d 180 (6th Cir.1960).

■ As stated by this court in *United States v. Levinson,* 405 F.2d 971 (6th Cir. 1968):

[A] valid indictment must fulfill two distinct functions. First, an indictment must inform the accused of the nature of the charges against him, with such specificity and particularity that the accused is enabled to undertake and prepare an adequate defense. Second, an indictment must be so framed that it should be evident to what extent a plea of double jeopardy is available to the accused in the event of future charges involving similar

offenses.... Not all lapses from precision and correctness require that an indictment be quashed. Nonprejudicial errors and defects do not invalidate indictments which otherwise fulfill the two prime requisites....

*Id.* at 977.

■ However, we do not imply that all surplus language is harmless and non-prejudicial. Even so, an analysis of surplus words in an indictment is necessarily a nebulous task which requires us to speculate as to the effect of semantic irregularities on the trial process.

For example, in *Michaud v. United States,* 350 F.2d 131 (10th Cir.1965), through its instructions, the lower court added an additional element to the crime of threatening the life of the President 18 U.S.C. § 871. Specifically, the court instructed the jury that they must find that "the maker of such threats intended to carry them out himself." *Id.* at 133. On direct appeal, the Tenth Circuit reversed the lower court and stated:

But here the instruction was favorable to the defendant not in the sense of imposing a higher degree of proof, but rather by inserting a false issue into the case. When a false issue of magnitude sufficient to nullify proper consideration of the issues is inserted into a case, the proper administration of justice is thwarted and a conviction so based cannot stand.

*Id.* at 134.

In *Gawne v. United States,* 409 F.2d 1399 (9th Cir.1969), *cert. denied,* 397 U.S. 943, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970), on direct appeal, a false issue relating to the purpose of the kidnapping was inserted into the indictment and included in the jury instructions. The court stated that in determining whether the introduction of the false issue affected the Appellant's substantial rights:

The answer to that question turns upon whether we can "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error...."

*Id.* at 1403, quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). The *Gawne* Court noted that the inclusion of the false issue could have directed "the attention of counsel and jury" and added: "If on the whole record it appeared that this circumstance interfered with the proper consideration of the real issues, reversal would be required." *Id.* at 1404. However, after examining the record, the court affirmed the lower court. Its determination was based upon the following factors: (1) the essential legal issues were fully explored; (2) little evidence was introduced concerning the unnecessary elements; (3) the addition of this element could only have had an adverse effect on the prosecution's case; and (4) the prosecution's evidence on the real issues was overwhelming.

Finally, in *United States v. Kartman,* 417 F.2d 893 (9th Cir.1969), in charging the defendant with the crime of assaulting a deputy marshal under 17 U.S.C. 111, the indictment alleged as a false element "knowing him to be such officer." The lower court found this language to be surplusage and refused to instruct the jury as to this element. On appeal, the Appellant argued that his defense was, in part, based on a lack of specific knowledge. The court stated that this alleged error as to Appellant's presentation of his defense, by itself, did not affect Appellant's substantial rights, however, the court reversed the conviction based upon the cumulative impact of this and other errors which occurred at trial.

In our analysis, we must reemphasize that this case, unlike the cases discussed above, does not come to us on direct appeal, but instead from state court by way of our habeas jurisdiction. While we do allow such due process claims to justify habeas relief where error impugnes fundamental fairness, the standard is necessarily much stricter where, as here, the case has already been carefully examined by a state appellate court.

Our own review of the record and applicable law leads us to the conclusion that Appellant's rights to fair notice and fundamental due process fairness were not infringed by the inclusion of the unnecessary element of lawful seizure. All of the essential elements of the crime of theft in office were properly alleged and proven as required by *Jackson v. Virginia, supra.* The unnecessary element was mere surplusage and did not change the nature of the offense charged or obscure the other language of the indictment. Thus, Appellant was given fair notice of the charges against him.

In addition, Appellant made no objection to the inclusion of the unnecessary element. The inclusion of this element could only have served to benefit the Appellant by creating an additional opportunity to argue that the prosecution had not met its burden of proof. However, Appellant ignored this alternative and instead based his defense on the non-existence of the handguns.

In conclusion, it appears that the addition of the surplus words was a mere semantic afterthought. Little or no evidence was introduced as to proof of lawful seizure. Therefore, despite the fact that the unnecessary language was repeated nine times during the proceedings, no irrelevant evidence was introduced which might have misdirected the focus of the trial participants and jury. As a result, we find that the inclusion of the surplusage did not render the trial fundamentally unfair.

IV.

■ In his fourth assignment of error, Appellant argues that the admission of Deputy Campbell's testimony that on the morning after the raid he observed the two pearl-handled pistols in an evidence bag marked with an evidence tag bearing the inscription "10001 Cedar Avenue" was improper in that the testimony was hearsay and violated his right of confrontation as guaranteed by the Sixth and Fourteenth Amendments.

We believe there is little question that Deputy Campbell's testimony concerning the inscription was hearsay. This holds true under both Ohio Law, *Potter v. Baher,* 162 Ohio St. 448, 55 Ohio Op.2d 389 (1955) and federal law. *See* Fed.R.Evid. Rule 801.

It is apparent that this testimony was offered to show the sheriff's possession and the method of handling guns in the Sheriff's Office.

■ The admission of hearsay does not necessarily require reversal of a conviction. This is particularly true on collateral attack where evidentiary errors rarely justify overturning a lower court judgment. *Buder v. Bell*, 306 F.2d 71 (6th Cir.1962). Therefore, the issue before us is whether the admission of this testimony violated the Confrontation Clause.

■ Hearsay rules and the Confrontation Clause are not one in the same. Evidence may be hearsay without violating the right of confrontation. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The United States Supreme Court has stated the purpose of the clause to be as follows:

> In short, the Clause envisions "a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

*Ohio v. Roberts*, 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537–2538, 65 L.Ed.2d 597, quoting *Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339–340, 39 L.Ed. 409 (1895). In the case at hand there was confrontation and cross-examination of the witness who testified as to observation of the guns.

■ In *Ohio v. Roberts, supra*, the court noted "the Framers' preference for face-to-face accusation" *Id.* 448 U.S. at 65, 100 S.Ct. at 2538, and stated:

> In sum, when a hearsay declarant is not present for cross-examination at trial the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred with-

out more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* at 66, 100 S.Ct. at 2539 (footnote omitted).

In rejecting Appellant's claim, the district court noted that the testimony of Campbell that someone else had written the address on the tag was sufficient to warn the jury against giving the evidence undue weight. In addition, the district court noted that the testimony of the informant Goodman (concerning Jordan and Lapsley) and of the newspaper reporter who stated that Appellant told him six handguns had been seized, was sufficient to independently establish that the handguns had been seized in the raid: The court then concluded that the testimony concerning the inscription was "neither crucial to the prosecution nor devastating to the defense."

We find ourselves in agreement with the district court. The admission of the testimony was harmless error which did not rise to constitutional proportion and did not violate the Confrontation Clause. We believe that the testimony concerning the writing on the evidence tag carried sufficient "indicia of reliability" to satisfy the Confrontation Clause. First, there was testimony to the effect that the evidence seized at the raid was handled in the usual manner of the Sheriff's Department. This included placing seized weapons into evidence bags and marking those bags with evidence tags. This would imply that the guns were properly marked with the rest of the evidence seized in the raid. Second, there was no reason to believe that either the declarant or Deputy Campbell had any apparent reason to misrepresent the facts. Third, even had the testimony concerning the notation on the tag been excluded, Deputy Campbell had testified that the guns were in an evidence bag and marked with an evidence tag. This would have been sufficient to establish that the guns were in the posses-

sion of the Sheriff's Department at the time of the theft. ·

## V.

The remainder of the alleged errors concerning the language of the indictment can be dispensed with quickly. In his 5th assignment of error, the Appellant argues that the State Appellate Court violated his due process rights by failing to apply Rule 30 of the Ohio Rules of Criminal Procedure. Rule 30 reads as follows:

> " . . . A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds for his objection. . . . "

Appellant contends that since the defendant is bound by Rule 30, the State is so bound also. Therefore, the State should not be allowed to contend that the language inclusion in the jury instruction relating to the lawful seizure of the handguns is immaterial.

We reject Appellant's arguments. Having found that the lawful seizure language was surplusage, the instruction relating to that language is equally without effect.

In his 8th assignment of error, Appellant contends that by finding Appellant guilty without any evidence of the lawful seizure of the handguns, the jury violated its oath. Once again, we find no merit to this argument. Having already determined that the lawful seizure language was unnecessary, it could have been properly disregarded by the jury without violation of its oath.

## VI.

In his 7th assignment of error, Appellant contends that there was insufficient evidence to support the conviction on the charge of intimidation of a public servant in the discharge of his duty as defined by Ohio Rev.Code, § 2921.03.

Appellant's argument can be broken down into two parts. First, he contends that Campbell's status as a deputy sheriff placed upon him no particular duty to investigate and report illegal activities of the Sheriff's Department. As to this argument, we agree with the state court's interpretation of its statute that "a deputy has an implicit duty to see that the law is upheld." *State v. Payne, supra* 7 O.O.3d at 439. Therefore, Campbell's investigation of the alleged irregularities was within the scope of his public duty as a deputy sheriff. Secondly, Appellant argues that the alleged threats did not amount to intimidation. Giving due deference to the jury's verdict, we find that there was sufficient evidence to support the jury's decision as to the intimidation conviction. Our determination in this matter is directed by the rule announced in *Jackson v. Virginia, supra,* that "the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* 443 U.S. at 319, 99 S.Ct. at 2789.

Finally, in his last assignment of error, Appellant contends that the constitutional infirmities alleged as to the theft in office charge entwined with the proof of the intimidation charge and resulted in a violation of his due process right to fundamental fairness. Although we consider this to be an ingenious argument, it fails for two reasons. First, we have already determined that those errors which may have occurred within the context of the proof of the theft in office charge were not of constitutional dimension. Second, the issue of the intimidation involved mainly a question of fact. The jury disbelieved Appellant's evidence. Proof of the theft in office charge and of the intimidation charge were sufficiently independent to have satisfied Appellant's right to due process.

## VII.

It has been urged that the cumulative effect of the numerous errors which occurred in the trial in the state courts require reversal. The majority of this panel believe that none of the claimed errors are of constitutional proportion and that

the cumulative error rule should not apply in this case.

This case is to be differentiated from some in which the rule has been applied. Appellant's guilt as to Count II has been sufficiently established if the State's witnesses are believed. In addition, the trial, of which complaint is made, was in the courts of the State of Ohio. Appellant carried his case to the highest court of that State. Although he obtained a well written dissent, the majority of the state judges reviewing this record did not feel the errors were sufficient to grant a re-trial. This is an important distinction.

As we have pointed out the individual errors claimed primarily presented issues of state law and not of federal constitutional proportion. Their cumulative effect did not, in our judgment, impugn fundamental fairness or otherwise deprive Payne of due process under the Fourteenth Amendment.

## VIII.

In conclusion, we find no error in the trial which is of constitutional proportion and as a result, affirm the district court as to the intimidation conviction and the theft in office conviction.

NATHANIEL R. JONES, Circuit Judge, dissenting.

Errors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair. *Walker v. Engle,* 703 F.2d 959 (6th Cir.1983); *United States v. McClister,* 608 F.2d 785, 788–90 (9th Cir.1979); *United States v. Diharce-Estrada,* 526 F.2d 637, 642 (1st Cir.1976). Cf. *United States v. Jones,* 482 F.2d 747 (D.C. Cir.1973); *United States v. Maroney,* 373 F.2d 908 (3rd Cir.1967). While the majority concedes that such a "cumulative error rule" exists, it declines to find that a proper application of that principle requires a reversal of the district court in this case. Because I am convinced that the majority either misperceives or misapplies the critical notions of cumulative error and fundamental fairness, I respectfully dissent from the decision it reaches.

The majority's treatment of this critical issue comprises only three short paragraphs. Accordingly, before explaining my bases for disagreement, I will repeat Section VII of the majority opinion in its entirety:

It has been urged that the cumulative effect of the numerous errors which occurred in the trial in the state courts require reversal. The majority of this panel believe that none of the claimed errors are of constitutional proportion and that the cumulative error rule should not apply in this case.

This case is to be differentiated from some in which the rule has been applied. Appellant's guilt as to Count II has been sufficiently established if the State's witnesses are believed. In addition, the trial, of which complaint is made, was in the courts of the State of Ohio. Appellant carried his case to the highest court of that State. Although he obtained a well written dissent, the majority of the state judges reviewing this record did not feel the errors were sufficient to grant a retrial. This is an important distinction.

As we have pointed out, the individual errors claimed primarily presented issues of state law and not of federal constitutional proportion. Their cumulative effect did not, in our judgment, impugn fundamental fairness or otherwise deprive Payne of due process under the Fourteenth Amendment.

The cursory nature of this analysis tends to cloud any search for its rationale. However, if taken at face value, the clear implication of the majority opinion is that whenever the bulk of the errors occurring during the course of a trial are errors of state law, there can be no denial of due process. The majority seems to believe, that absent the existence of individual errors of "constitutional proportion," the cumulative effect of *all* errors could never "impugn fundamental fairness." This approach simply begs the question.

It is true that mere errors in the application of state law are generally not cognizable in the federal habeas corpus context. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558,

1568 n. 21, 71 L.Ed.2d 783 (1982); *Bell v. Arn,* 536 F.2d 123 (6th Cir.1976). Yet, errors of state law which result in a denial of fundamental fairness *do justify* habeas corpus relief. *Handley v. Pitts,* 491 F.Supp. 597, 599, aff'd., 623 F.2d 23 (6th Cir.1980); *Maglaya v. Buchkoe,* 515 F.2d 265 (6th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975); *Gemel v. Buchkoe,* 358 F.2d 338 (6th Cir.1966). The threshold question, therefore, is not whether errors are errors of state or federal law, but whether there has been an inroad on fundamental fairness. To answer that question is the precise aim of any cumulative error analysis.

Just as isolated errors are generally not to be considered outside the context of the "curative" effects of the remainder of a trial, *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), so too, we must consider whether the combined effect of any series of errors (no matter what the nature of each error when isolated), "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643, 94 S.Ct. at 1871.[1] It is well settled that due process of law at least guarantees that "convictions cannot be brought about by methods that offend a sense of justice." *Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1951). The majority would apparently view trial errors in isolation to determine whether they are of "constitutional proportion" before admitting that the cumulative impact of those errors could amount to a denial of due process. Such an approach fails to address the underlying question with which we must grapple, whether the petitioner's trial, as a whole, was fundamentally fair. I believe that it was not.

The discrepancy between the indictment and the proofs at trial is first among the errors which characterized the flawed trial of Major Payne. As the majority notes, not all surplus language is harmless and nonprejudicial. In fact, whenever on the record as a whole it appears that the inclusion of an otherwise unnecessary issue "interfere[s] with the proper consideration of the real issues, reversal [is] required." *Gawne v. United States,* 409 F.2d 1399 (9th Cir.), *cert. denied,* 397 U.S. 943, 90 S.Ct. 956, 25 L.Ed.2d 123 (1969). *See also, Michaud v. United States,* 350 F.2d 131 (10th Cir.1965) (where added issue prevents proper consideration of other issues in trial, conviction cannot stand).

In the present case the element of "lawful seizure" was injected at every stage of the proceedings: in the indictment, throughout the course of the government's case, during the argument of counsel, and in the instructions to the jury. The very cases relied upon by the majority support the conclusion that the injection of that issue was impermissible.

In *Gawne* the court partially based its conclusion that the verdict had been unaffected by a surplus element in the indictment on the fact that the evidence on the statutory elements of the offense was overwhelming. In a very detailed dissent from the decision of the state court of appeals in the present case, Judge Jackson clearly pointed out the meager nature of the evidence against the appellant. He concluded that, on the record as it stood, a guilty verdict was against the manifest weight of the evidence. Without repeating Judge Jackson's well-reasoned dissent, I believe that the review which led him to find that the evidence was insufficient to support the jury verdict leads easily to the conclusion that the evidence was not *overwhelming,* as

---

1. Given the vague contours of the due process guarantee, one's constitutional right to due process can only be adequately protected if the judiciary maintains a "wide-lens" view of the proceedings by which an individual is ultimately deprived of his liberty:

 Regard for the requirements of the Due Process Clause "inescapably imposes upon this Court an exercise of judgment upon the whole course of the proceedings resulting in

 a conviction in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses. *Malinski v. New York, supra,* 324 U.S. 401, at 416–417, 65 S.Ct. 781, at 788–789, 89 L.Ed. 1029.

 *Rochin v. California,* 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1951).

would appear to be required for a proper application of *Gawne*.[2]

In *United States v. Kartman,* 417 F.2d 893 (9th Cir.1969), the Court refused to set aside a verdict solely on the basis of surplusage which allegedly induced the defendant to misplace the emphasis of his defense. The district court had also improperly rejected a written offer of proof and had failed to allow the defendant a reasonable opportunity to cross-examine one of the prosecution's witnesses. Considering the presence of the surplus *in conjunction with the other errors* occurring at trial, however, the Court found that the conviction could not stand. The cumulative impact of the errors in the present case appears at least as prejudicial as that in *Kartman,* making an application of the principle established and the result reached by the Ninth Circuit particularly appropriate. All other errors must therefore be considered in light of the presence of a surplus issue which, though the defendant was required to defend against, the government wholly failed to prove.

The majority recognizes that the admission of Campbell's testimony regarding an evidence tag was error; the testimony was clearly hearsay. The majority concludes, however, that the error was harmless because the evidence tag carried its own "indicia of reliability." It notes that the circumstances surrounding the tag's alleged existence indicate that it was written by someone in the Sheriff's department in the "usual manner," that there was "no apparent reason" for anyone to misrepresent the facts and that there was sufficient other evidence indicating that the guns had been seized in the raid, making the testimony noncrucial. I simply cannot agree with this analysis of the issue.

Even if one assumes that lawful seizure need not be shown, establishing a source for these guns greatly adds to the credibility of the claim that they existed *at all,* and to the claim that they were present in the Sheriff's office at the time of the alleged theft. This was the only piece of tangible evidence from a seemingly uninterested source which directly corroborated Campbell's testimony. There was, however, no indication who had written the tag, what that person's motivation was, or when it had been done. Rather than presenting clear indicia of reliability, the fact that no one could testify to having written the tag, or to having knowledge of who did so, indicates a blatant element of unreliability.

An argument that the error was harmless because Campbell could have testified that the guns were present in the evidence bag is contrary to reason. The obvious purpose of the testimony regarding the tag, and the obvious prejudice resulting from its admission, was to corroborate the testimony of a seemingly biased witness whose testimony, if standing alone, could easily have been undercut by the contrary testimony of the other deputies. I address this particular error in detail because I believe that, beyond the incremental impact the presence of this error has on a cumulative error analysis, the admission of this evidence, in and of itself, rises to the kind of "constitutional proportion" that would warrant reversal of the appellant's conviction, flying in the face of the appellant's Sixth Amendment confrontation rights.

The remainder of the alleged errors dealing with the theft-in-office charge are "dispensed with quickly" by the majority. The majority concludes that once the lawful seizure language in the indictment is deemed surplusage, the appellant's claims of insufficient notice of the charges against him, of the non-uniform application of Ohio Rule 30 and of the jury's failure to follow its oath[3]

---

**2.** Actually, I have a problem with *any* application of *Gawne*. The appellant claims that the government should be required to prove the elements included in an indictment and that it was the total failure to prove the element of "lawful seizure" which resulted in an unfair trial. *Gawne* holds that where the state fails to prove the added element, we can assume that it was not crucial to their case and, hence, does

not present any problems of fundamental fairness. The logic of this approach evades me. Not only does it fail to address the appellant's argument that the state should be required to *prove* all elements of an indictment, but the potential confusion which may infect the propriety of the trial as a whole is totally ignored.

**3.** The jurors were specifically instructed that they should not return a guilty verdict unless

can all be rejected. The majority concludes either that proper action in these contexts was unnecessary or that any error would be irrelevant. I can also dispense with these charges quickly since I believe errors are never irrelevant where their combined effect is to create a trial atmosphere which is constitutionally infirm.

I am not unmindful that, as the majority repeatedly asserts, we are dealing with a conviction in state court. However, "The due process clause places upon this Court the duty of exercising a judgment, within the narrow confines of judicial power in reviewing State convictions, upon interests of society pushing in opposite directions." *Rochin v. California,* 342 U.S. at 171, 72 S.Ct. at 209. Even with the limitations on state court review which are written into the habeas corpus statute and have been expanded upon by myriad court decisions in the area, the Great Writ continues to play a vital role in our jurisprudence. A trial court must not be permitted to allow the state to attain a conviction if it overrides constitutional protections in the process. Constitutional guarantees must be protected even where it entails, by necessity, disagreement with the highest court of a state. That is precisely why 28 U.S.C. § 2254 exists.

In the words of Justice Frankfurter, "Due process is that which comports with the deepest notions of what is fair and right and just." *Solesbee v. Balkcom,* 339 U.S. 9, 16, 70 S.Ct. 457, 460, 94 L.Ed. 604 (1949) (dissenting opinion). Simply put, the trial afforded the petitioner was so fundamentally unfair that it amounts to a denial of due process. Hence, I must dissent from the refusal to grant the writ and to order a new trial in this case.[4]

and until they made the determination that the guns had been lawfully seized. It is not seriously debated that there is virtually no evidence of lawful seizure. The appellant claims that a guilty verdict under those circumstances is clear evidence that the jury violated its oath. The state court and the majority simply find that since the lawful seizure language is deemed unnecessary, the lack of evidence regarding it is irrelevant. Such a response, even if true, fails to answer the contention that the jury was clearly not acting in accordance with the instructions given by the trial judge and, hence, were in apparent violation of their oath.

The cumulative error analysis employed in this dissent relieves me, from discussing the proper course for an appellate court to take in such circumstances.

4. The appellant also contends that the constitutional infirmities inherent in the theft-in-office conviction necessitate a reversal of the intimidation conviction as well. He contends that the two are so intertwined that they must fall together. The appellant notes that *if* the theft-in-office charge were believed, and the jury thought the claims of that theft were in the notes that Campbell claims to have kept, the jury would then have in mind a motive for the alleged threats. Essentially, the appellant claims that the intimidation charge is only logically supportable if the theft charge is true and provable. Hence, if the theft conviction is reversible, so must be the intimidation conviction.

The majority simply determines that the evidence was independently sufficient under a *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard to support the intimidation charge. While I agree with the majority that where the issue turns on which witnesses the jury chooses to believe, this Court is not free to overturn a verdict under a pure sufficiency of the evidence review, there is more at issue here. My conclusion that the appellant's trial as a whole was so fundamentally unfair as to make any resulting conviction constitutionally impermissible cannot be segmented. The danger of prejudice infects the entire trial and, hence, even if the appellant's own intertwining argument is rejected, a new trial on all charges is mandated by notions of fundamental fairness and due process—notions which can neither be ignored nor only partially satisfied.