NOT FOR PUBLICATION
File Name: 05a0359n.06
Filed: May 6, 2005

NO. 02-4079

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DONNIE R. NEACE, JR.,

       Petitioner-Appellee,

v.

RONALD EDWARDS, Warden,

       Respondent-Appellant.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE: SUHRHEINRICH and GIBBONS, Circuit Judges; and LAWSON, District Judge[*]

**SUHRHEINRICH, Circuit Judge.** Respondent-Appellant Ronald Edwards, Warden, ("Respondent"), appeals from the order of the district court granting a conditional writ of habeas corpus to Petitioner Donnie R. Neace, ("Petitioner"), in this habeas corpus action brought under 28 U.S.C. § 2254. For the reasons that follow, we **REVERSE** the decision of the district court.

**I. Factual Background**

On the night of July 2, 1998, a boating accident resulted in the death of Mary Neace, Petitioner's wife, and Bruce Dysert, Petitioner's friend. Petitioner was the only other person in the boat at the time of the accident. The district court adopted the following facts found by the state court of appeals[1]:

_____

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]The parties agree as to these facts.

Shortly after midnight on the evening of July 2, 1998, Donnie R. Neace left the Shingle Shack Inn accompanied by his wife, Mary Neace and his best friend, Bruce Dysert. They were headed for Mr. Neace's boat located in the channels to Grand Lake St. Mary's behind the Shingle Shack Inn. Thomas and Denise Besecker, a couple who had also been socializing at the Shingle Shack Inn, left the bar with the group of three intent on accompanying them on their midnight "spin" through the lake.

The Besecker boat led the way out of the channel and onto the lake's main body. Neace took his seat as operator of the boat, while his wife Mary sat in the passenger seat and Bruce Dysert sat in the back seat. After being seated, Neace started his boat and followed Besecker out through the channel. Passing from the channel into the bay Neace's boat passed the Besecker's and began accelerating at a high rate of speed. When Neace passed Besecker he remained in the driver's seat operating the boat. Minutes later the boat crashed.

The authorities arrived on the scene shortly after the collision. They transported all three passengers in Neace's boat to the hospital. Later that evening, Bruce Dysert was pronounced dead from injuries resulting from a violent ejection from the boat upon impact into the stone embankment. Several days later, Mary Neace was also pronounced dead. Donnie Neace survived.

*State v. Neace*, No. 10-99-07, 2000 WL 228921, at *1 (Ohio Ct. App. Mar. 1, 2000).

The state court record established that at approximately 12:30 a.m., Mercer County Sheriff Sergeant Joe Portz arrived at the emergency room of Coldwater Community Hospital. He had earlier been at the scene of the accident. Sergeant Portz intended to test Petitioner's blood alcohol level (BAC) but Petitioner refused to give a blood, breath, or urine sample. Sergeant Portz later observed a lab report at the nurses' station indicating that Petitioner's BAC was above the legal limit. Sergeant Portz arrested Petitioner at the hospital, charging him with operating a watercraft under the influence. Neace was later charged with two counts of aggravated vehicular homicide.

On July 31, 1998, Petitioner pled not guilty to the charges. On September 3, 1998, Petitioner's counsel filed a motion to suppress the hospital records and all statements Petitioner made to law enforcement officers. Petitioner claimed that Sergeant Portz violated his constitutional

2

rights in obtaining the BAC because the police had no authority to be at the nurses' station. The Court of Common Pleas denied the motion, stating that although the testimony of Sergeant Portz regarding the lab report was inadmissible as hearsay, Petitioner's hospital records, and statements and evidence obtained by law enforcement personnel after Sergeant Portz observed the lab report were admissible and not "fruits of the poisonous tree." *State v. Neace*, 98-CRM-049 (Ct. C.P. Mercer Cty, OH. Jan. 6, 1999).

On June 22, 1999, the case was tried before a jury. Both parties agreed that the central issue was the identity of the person operating the boat at the time of the accident. Petitioner testified he could not remember whether he was operating the boat at the time of the collision; however, the primary theory of his case was that he was not operating the boat when it crashed. In support of this theory, the defense presented expert testimony that, based on the physics of the movement of the boat and the damage to the boat, the driver would have been ejected from the boat on impact. Since Dysert, not Petitioner, was ejected at the time of the accident, the expert concluded that Bruce Dysert must have been driving the boat. The defense expert also contended that the broken driver's side windshield caused the lacerations Dysert sustained on his arm.

The State's expert countered that Dysert's lacerations could just as easily have been caused by the rocks of the embankment, since there was no glass embedded in his arm. The State's expert also maintained that defense expert's accident reconstruction was flawed because it failed to take into account either the speed of the boat or the fact that the back passenger seat was ejected from the boat upon impact. In addition, the State also presented the Beseckers, who testified that they had seen Petitioner driving the boat just prior to the accident.

As part of its case, the State introduced into evidence a multi-page exhibit–Exhibit 7. The

3

exhibit consisted of an Ohio Division of Parks and Recreation waiver of rights form and an Ohio Department of Natural Resources implied consent form. Attached to these forms was a Department of Natural Resources alcohol influence form numbered DNR 8265. DNR 8265 contained the question, "Were you operating a vehicle/vessel?" This question had been answered, "Yes." Sergeant Portz signed the bottom of this form. The form also indicated that Sergeant Portz advised Petitioner of his Miranda rights at 2:12 a.m.

Petitioner's counsel did not object at trial to the admission of DNR 8265. Although Sergeant Portz testified at trial, he was not asked to lay a foundation for DNR 8265, nor did Petitioner's counsel cross-examine him as to Petitioner's alleged statement contained in that report. During jury deliberation, the jury submitted two questions to the court. The first was, "Why wasn't the interview stating that [Petitioner] was driving the boat not brought up in the trial?" The court responded, "[T]he court is not permitted to answer this question." The second question was, "Does the Exhibit 7 constitute an admission of guilt?" The court responded, "[Y]ou must decide this case based upon the evidence admitted at trial . . . Evidence may be direct or circumstantial or both. Direct evidence . . . includes any exhibits admitted into evidence during the trial."

On June 25, 1999, the jury returned guilty verdicts on both counts of aggravated vehicular homicide and a specification on each count that Petitioner was under the influence of alcohol at the time he committed the offense. The trial court denied Petitioner's motion for acquittal and motion for a new trial. On July 28, 1999, Petitioner was sentenced to two consecutive three-year terms.

## II. Procedural History

On July 29, 1999, Petitioner appealed to the Ohio Court of Appeals, alleging improper jury instructions and deprivation of the right to effective assistance of counsel. Petitioner specifically

4

alleged that his counsel was ineffective because he allowed the prejudicial admission statement to be entered as an exhibit without objecting or cross-examining the officer about the exhibit. On March 1, 2000, the Ohio Court of Appeals affirmed the judgments of conviction and sentence. Applying the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the court found as follows:

> Neace claims his counsel was ineffective because he failed to object to the admission of a statement made by Neace during an interview with Sergeant Portz. The statement consisted of an admission that he was indeed driving the watercraft at the time of the collision. However, the record reveals that Neace's attorney filed a motion to suppress the evidence obtained by Sergeant Portz at the hospital on the night of July 2, 1998. That motion was denied by the trial court. This court, therefore, finds no basis in the record for a claim of ineffective assistance of counsel. No error having been shown, Neace's third assignment of error is overruled.

*State v. Neace*, No. 10-99-07, 2000 WL 228921, at *3. The Ohio Supreme Court subsequently dismissed Petitioner's appeal from this decision as not involving any substantial constitutional question.

On August 10, 2001, after exhausting all other avenues for relief, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio, alleging improper jury instructions and denial of effective assistance of counsel. The district court rejected Petitioner's argument as to the jury instructions but held that Petitioner's ineffective assistance of counsel claim had merit. As to the first prong of *Strickland,* the district court held:

> Petitioner contends that since his primary defense was premised on the contention that there was insufficient proof that he was driving the boat at the time of the accident, counsel's failure to object to the admission of a police report that contained his statement that he was driving the boat constitutes deficient performance. Although Ohio Evidence Rule 803(8) provides an exception to the hearsay rule for reports of public offices or agencies setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," the rule specifically excludes in criminal cases reports of "matters observed by police officers and other law enforcement personnel, unless offered by defendant . . . " As

5

one court explained, allowing the state to prove its case through police records or reports in criminal cases would violate both the hearsay rule and the accused's constitutional right of confrontation. *State v. Spinks*, 79 Ohio App. 3d 720, 729 (Cuyahoga Cty. 1992).

[sic] Thus, in light of the defense advanced at trial, failing to object to DNR 8265 which was offered as part of Trial Exhibit 7 falls below an objective standard of reasonableness and cannot be considered "sound" trial strategy. In fact, trial counsel indicated that he was not even aware of the statement contained in DNR 8265 and, for that reason, did not object. *See* Poppe Affidavit, PP21 & 18[] (attached to Respondent's Exhibit 24). The Court finds that petitioner has satisfied the first prong of *Strickland.*

*State v. Neace*, No. 3:01CV7425, at 12-13 (N.D. OH. 2002).

Regarding the prejudice prong, the district court held that:

[C]ounsel's deficient performance prejudiced his defense. As indicated above, this requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The defense theory at trial was that petitioner was not operating the boat at the time of the accident. As noted by the state appellate court, "[i]t is undisputed that the question of who was operating the watercraft at the time of the collision was the central issue at trial." Respondent's Exhibit 20, p. 6.

At trial, petitioner's expert witness testified that he considered the scrape marks on the boat as well as damage to the boat in determining the movement of the boat and its occupants as it struck the rocky embankment at the time of the accident. The expert's testimony indicated that petitioner could not have been driving the boat. He testified that the only person who could have been ejected from the boat, consistent with the physics of the movement of and damage to the boat, was the driver in a kneeling/standing position. Bruce Dysert, not petitioner, was the only occupant of the boat who was ejected at the time of the accident.

Defense counsel's failure to object to DNR 8265 substantially undercut petitioner's defense theory and his expert's testimony. It is clear, as indicated by the juror's questions to the Court, that they took note of the exhibit and at least considered the statement may be an admission that petitioner was driving the boat at the time of the accident.[] Admission of this document tended to relieve the State of its burden of proof on an element of the offense, an element that was the central issue at trial. Without DNR 8265, there is a reasonable probability that the jury would have credited the expert testimony offered by petitioner and would have had a reasonable doubt about whether petitioner was operating the boat and, thus, about his guilt. As such, petitioner has demonstrated that his "counsel's errors were so

serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

*Id.* at 13-15.

The district court conditionally granted Petitioner the writ of habeas corpus and ordered that "respondent shall release the petitioner from further custody unless the petitioner is granted a new trial within ninety (90) days from the date of this order or, if appealed, from the date on which this order becomes final." *Id.* at 16-17. The district court denied Respondent's motion to alter or amend judgment.

Respondent filed the present appeal.

### III. Standard of Review

We review a district court's legal conclusions in a habeas corpus proceeding *de novo.* *Dennis v. Mitchell*, 354 F.3d 511, 516-17 (6th Cir. 2003).

### IV. AEDPA Standard

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214, ("AEDPA"), governs this appeal. Under the AEDPA, an application for writ of habeas corpus by a state prisoner shall not be granted unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) if the state court arrived at the conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court's decisions on materially distinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" occurs when the state court identified the correct legal principle from the Supreme Court precedent but unreasonably

7

applied that principle to the facts of the case before it.  *Id.*

Under § 2254(d)(1)'s "unreasonable application clause," a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied *Strickland* incorrectly.  *See Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citing *Bell v. Cone*, 535 U.S. 685, 698-99 (2002)), *rev'd on other grounds*, 125 S. Ct. 847, 850 (2005).  "Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner."  *Id.*

## V. Analysis

Respondent contends that the district court erred in finding that the trial counsel's errors deprived Petitioner of a fair trial and in granting the writ.  Respondent claims that the state appellate court decision was not an unreasonable application of *Strickland* because the jury would not likely have given greater credence to the testimony of Petitioner's expert even if trial counsel had objected to the admission of DNR 8265.  The question here is whether the state appellate court unreasonably applied *Strickland* in holding that trial counsel's failure to object to the admission of DNR 8265 and/or cross-examine Sergeant Portz did not constitute ineffective assistance of counsel.

The Sixth Amendment right to counsel entitles a defendant to the effective assistance of counsel.  *Strickland*, 466 U.S. at 686.  *Strickland* sets forth the two-part test for determining ineffective assistance of counsel.  *Id.* at 687.  First, counsel's performance must be deficient, falling below an objective standard of reasonable representation.  *Id.*  Second, there must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Id.* at 694.

## I.  Cause

The Ohio Court of Appeals found no cause under the first prong of *Strickland* because Petitioner's counsel had filed a motion to suppress prior to trial and the court denied that motion. On appeal, Respondent acknowledges that the state court of appeals erred in relying upon the trial court's decision to deny a motion to suppress because the motion pertained only to the admissibility of Petitioner's BAC and not to Exhibit 7. Respondent also concedes that this ruling was "unreasonable." In any event, because we find no prejudice, we need not address the cause prong of *Strickland*. *See id.* at 697 (stating that it is not necessary to address both performance and prejudice and that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). Therefore, we move directly to the prejudice prong.

## 2.  Prejudice

The state appellate court did not analyze the prejudice prong of *Strickland*, having found no cause. Therefore, our review of this issue is *de novo*, and no deference is owed to the state court decision. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis."); *see also Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (deferential standard of AEDPA inapplicable when state court has not addressed merits of ineffective assistance of counsel claim); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (same).

The district court held that there is a reasonable probability that the outcome of Petitioner's trial would have been different but for his trial counsel's performance because without DNR 8265,

9

there is a reasonable probability that the jury would have had a reasonable doubt about whether Petitioner was operating the boat. On appeal, Respondent argues that the district court's conclusion was erroneous because there is no evidence to support Petitioner's theory that he was not the driver of the boat and therefore trial counsel's performance did not prejudice him. Respondent also argues that the testimony of Petitioner's expert was not convincing enough to rebut the testimony of witnesses who saw Petitioner in the driver's seat prior to the accident, and thus, was not likely to have created a reasonable doubt in the minds of the jurors as to who was driving.

Under the prejudice prong of *Strickland*, reasonable probability that the result of the proceeding would have been different is a probability sufficient to undermine confidence in the outcome. *See Strickland*, 466 U.S. at 694. As *Strickland* notes, trial errors are less likely to affect a verdict with "overwhelming record support." *Id.* at 696. Additionally, our task as a habeas court is not to upset state court judgments by substituting our judgments or opinions. *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) (stating that the role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited, and that federal courts are not forums in which to relitigate state trials); *see also Payne v. Janasz*, 711 F.2d 1305, 1310 (6th Cir. 1983) (recognizing that a federal court of appeals reviewing a state court judgment is not acting as a "super state supreme court") (quoting *Martin v. Wainright*, 428 F.2d 356, 357 (5th Cir. 1970)).

The district court erred in concluding that counsel's error caused Petitioner to suffer prejudice. First, even if counsel had objected to DNR 8265 based on Ohio Rule of Evidence 803(8), Respondent would almost certainly have sought to admit the statement as a party admission.[2] *See*

---

[2]Under Ohio Rule of Evidence 801(d)(2)(A), a statement is not hearsay if the statement is "offered against a party and is (a) his own statement[.]"

*State v. Leonard*, 818 N.E. 2d 229, 258 (Ohio 2004) (determining that the trial court erred in admitting certain police reports because they were inadmissible hearsay, but stating that the police officer who wrote the reports could have testified to the confession made by the defendant as an admission); *State v. Jackson*, 565 N.E.2d 549, 558 (Ohio 1991) (reading of police report into evidence by officer was error, but the error was harmless because the "trial court could properly admit into evidence, as an admission" what the defendant told the police officer). Second, if Respondent had admitted DNR 8265 and Petitioner's counsel had cross-examined Portz, it is doubtful that this cross-examination would have changed the outcome in Petitioner's favor. Petitioner was sufficiently coherent at 2:12 a.m. to have refused to submit to an incriminating blood alcohol test; surely within minutes of that time he was equally coherent enough to understand the incriminating nature of the question, "Were you operating the boat?"

Additionally, there was strong evidence presented against Petitioner. The record shows that he had been drinking just before getting in his boat, and police observed beer cans in the boat and in the lake. The hospital took Neace's blood alcohol level, which registered .148 and was above the legal limit. Neace himself testified that he was the last person he remembers driving the boat before he "lost memory." The Beseckers, a couple who had been socializing at the Single Shack Inn and were also out on a boat that evening, saw Neace driving his boat only minutes before the accident. Thomas Bubp, who lived in a house on the lake, testified that he heard the boat going very fast and that the boat's speed was constant until the crash. The testimony of the Beseckers and Bubp established that it would have been difficult for Neace to change positions with Dysert before the crash, because the boat was traveling at such a high rate of speed. Finally, both sides presented expert testimony. The state's expert testified that the back seat passenger would have been ejected

11

if the boat had been traveling at sufficient speed, thus supporting the theory that Dysert was thrown out of the boat from the back seat when the boat crashed. While Petitioner's expert, Michael Pepe, concluded that Dysert had been the driver, his analysis was flawed in certain ways. With respect to the computer program he used to simulate the crash, Pepe testified, "I'm not going to say that what the computer predicted is exactly what took place. There are just too many variables for that." Additionally, Pepe concluded that Dysert was the driver because he had lacerations on his right arm and the windshield shattered during the crash; however, a coroner never found any glass in Dysert's lacerations and the lacerations could also have resulted from Dysert hitting the rocks. Given the evidence before the jury, even if trial counsel had objected to the admission of DNR 8265, the jury was not likely to have given greater credence to the testimony of Petitioner's expert that Dysert was the driver of the boat, when the state's expert, eyewitness testimony, and other evidence strongly pointed to Neace as being the driver of the boat.

Under these circumstances, we do not believe there is a reasonable probability that, but for counsel's error, the jury may have had a reasonable doubt as to whether Petitioner was operating the boat and may not have convicted Petitioner of two counts of aggravated vehicular homicide. Therefore, there is no clear prejudice under *Strickland.*

## VI. Conclusion

For the reasons set forth above, the judgment of the district court conditionally granting Petitioner's request for habeas corpus is **REVERSED.**

12